HUBERT M. G. BROWN, PLAINTIFF IN ERROR, V. A. HERR ET AL., DEFENDANTS IN ERROR.

1.  Conspiracy to perpetrate fraud: DECLARATION ADMISSIBLE IN EVIDENCE. In an action where the cause of action, or ground of defense, is based upon a conspiracy by two or more persons to perpetuate a fraud upon the party asserting such cause of action or ground of defense, the acts and declarations of one of such company of conspirators in regard to the common design as affecting his fellows—a foundation having been laid by proof sufficient in the opinion of the court to establish *prima facie* the fact of conspiracy between the parties, or proper to be laid before the jury, as tending to establish such fact—in pursuance of the original concerted plan, and with reference to the common object, may be given in evidence.

2.  The evidence examined and *held* to sustain the verdict.

3.  The instructions prayed and refused, and those given by the court on its own motion, as copied at length in the opinion, *Held*, To have been properly refused and given.

ERROR to the district court for Fillmore county. Tried below before MORRIS, J.

*W. V. Fifield* and *J. W. Eller*, for plaintiff in error.

*J. D. Hamilton* and *Ryan Brothers*, for defendants in error.

COBB, J.

This action was brought by the plaintiff Brown, against the defendants Amos Herr and eleven others, on a prom-

8

issory note payable to H. M. G. Brown, one year after date, for the sum of eight hundred and six dollars, with interest at ten per cent per annum from date. The petition, after setting out the execution and delivery of the note, with a copy thereof, contains the allegation, "that no part of the said note has been paid, and there is due thereon from the defendants to the plaintiff, $806, with interest thereon at the rate of 10 per cent per annum from February 9, 1882, for which plaintiff demands judgment.

For answer defendants filed a general denial.

On the 21st day of May, 1884, the cause came to a hearing on the motion of the defendants to require the plaintiff to give security for costs, whereupon it was ordered that the plaintiff give security for costs, to be approved by the clerk of the district court within thirty days, and in case of his failure so to do, the cause to stand dismissed.

On the 28th day of October, 1884, a stipulation was entered for the setting aside of the order of dismissal, reinstating the cause, and allowing the defendants time in which to file an amended answer, and thereupon defendants filed the following amended answer:

"1. Deny each allegation of plaintiff's petition not hereinafter specifically admitted.

"2. That the note was obtained, so far as these defendants are concerned, by the fraud and connivance of the plaintiff and defendant A. Herr.

"That there was no consideration for said note.

"That A. Herr was the principal maker of said note and these defendants accommodation sureties.

"That said note was drawn up by plaintiff and defendant Herr, or by their procurement, and was signed by Herr to evidence an indebtedness which in fact had no real existence, but was falsely pretended by said plaintiff and defendant Herr to have an existence, and in furtherance of the scheme between plaintiff and said Herr to collect the same of other parties who might be induced by them to sign the same and divide the proceeds.

"The said note so prepared and signed by Herr as aforesaid was presented to each of these defendants, and each was solicited by defendant Herr and plaintiff to sign the same as sureties.

"That by causing some of these defendants to become helplessly intoxicated, and by falsely pretending that the said Herr would pay said note in a very short time, which they said he would be able to do, and that the note was for a *bona fide* indebtedness, these defendants were induced as sureties to sign said note.

"That said defendant Herr was then insolvent and so known to be to plaintiff; that plaintiff knowing that these defendants believed Herr to be solvent, encouraged these defendants to sign said note, and solicited them to so sign as sureties.

3. That at the date of the note sued on, the plaintiff and Herr were engaged in the saloon business in Geneva— the said business being run in the name of A. Herr, the said Herr being in fact the proprietor.

"That plaintiff was bar tender in said saloon at the date of said note, and so remained until about two months after said date.

"When the said Herr, being unable to obtain a license in his own name, took out a license to run the saloon business as aforesaid, in the name of the plaintiff, and thereafter the said business was run in that manner, until about two months and a half after the note became due. The said plaintiff during this latter period being nominally the proprietor, but in reality but a bar tender under the same salary and terms as at the date of the note.

"At the date of the note it was represented to these defendants by both Herr and plaintiff that the note was to be taken only to be held for a very short time, in which sufficient money should come into the hands of plaintiff in the course of his employment to pay the amount of said note in full, and the said plaintiff and said Herr then and there,

to induce these defendants to sign said note, agreed that the proceeds and receipts in the saloon business aforesaid should be wholly applied to extinguishing said note in full.

"These defendants relying on said representations that payment would be so made and decreased.

"By the fraudulent practices aforesaid of said Herr, and the said plaintiff (having no interest in the note sued on or its proceeds, and simply as accommodation sureties, signed said note, relying on the protection by plaintiff of the rights of these defendants).

"That the income of the said saloon business for the whole time the saloon was running aforesaid, that is, from February 9, 1882, till fourteen and one-half months thereafter, was upwards of $30 net per day, and the application of the same, as agreed when these defendants signed the same as sureties as aforesaid, would have fully paid said note and discharged each of these defendants from any liability on said note."

On the 19th day of May, 1885, plaintiff filed a general denial for reply to the amended answer. There was a trial to a jury, with a verdict and judgment for the plaintiff against the defendant Amos Herr, and for the other defendants against the plaintiff. The cause is brought to this court on error by the plaintiff, who assigns the following errors :

"The plaintiff in error says there is error on the face of the record in this:

"1st. In admitting the testimony of E. Sheppard, as to the solvency of A. Herr at the time the note was signed.

"2d. In admitting the testimony of Josiah Sheppard relating the conversation between himself and defendants Shultz and Herr.

"3d. In admitting the testimony of Josiah Sheppard, stating the conversation with plaintiff after the note became due, relating to the reason why he didn't retain the money out of the proceeds of the saloon.

"4th. · In admitting the testimony of defendant Arnold relating to the income or net proceeds of the saloon.

"5th. In admitting the testimony of defendant Wintersteen, relating his conversation with Herr and not in the presence of plaintiff.

"6th. In overruling plaintiff's motion to strike out the testimony of defendant McDougal.

"7th. In admitting the testimony of Dworak relating to the security for costs.

"8th. Admitting the bond for costs in evidence.

"9th. In admitting the testimony of Burt as to signing the bond for security for costs.

"10th. In the charge of the court, in giving paragraphs numbered *First, Second, Fourth, Fifth, Sixth, Seventh, Eighth, Ninth,* and in giving the charge as a whole.

"11th. In refusing to give the instructions asked for by plaintiff, number *First, Second, Third, Fourth, Fifth, Sixth, Seventh, Eighth, Ninth, Tenth.*

"12th. In overruling the plaintiff's motion for a new trial."

Upon the trial there was evidence tending to prove, and it is nowhere denied, that at the time of the execution of the note sued on the plaintiff and the defendant Herr were engaged in keeping a liquor saloon at Geneva; that they came to that place together and had been living and operating together in same business before coming there. At first the saloon at Geneva was "run" in Herr's name and Brown was ostensibly engaged by him as barkeeper. But upon the expiration of Herr's license he was unable to procure another license in his own name, and license was procured in Brown's name. Yet the evidence tends to prove that their relations to the business and to each other remained unchanged in point of fact, although the license being in Brown's name he was necessarily the ostensible proprietor. It was while this state of things existed that some, at least, of the defendants were induced to sign the

note as security for Herr. I quote the evidence in chief of E. Sheppard, one of the defendants:

"Am one of the signers of the note; acquainted with Mr. Herr and Mr. Brown.

Q. You may state the circumstances under which you signed this note.

A. I saw Mr. Herr on the sidewalk; he wanted me to come in and said he wanted to talk with me; previous to this time I had signed a note with Mr. Herr for $600; he wanted I should sign a note with him; this conversation was in the saloon; Brown was in the same room and in hearing distance; (Mr. Herr) said he wanted I should sign a note with him, and he said he wanted to give the note to Mr. Brown, and he had a note drawn up; I told him I was good for nothing, and he said that others said they would sign the note if I would; I signed it; he told me what the proceeds of the bar was and said that Mr. Brown was handling the bar and proceeds of the saloon, and he said the income of the bar should pay the note; he said the income of the bar was from $30 to $50, except on extra days they took in $100 per day; Herr was principal on the note; there were other names on the note besides Herr when I signed it; I think Wintersteen, Josiah Shepard, Eli Shultz, and others.

Q. State whether or not Mr. Herr was solvent at that time or not.

Plaintiff objects. Grounds of objection immaterial, irrelevant, and incompetent. Court overruled objection.

A. He said he was all right for it himself; that was in the presence of Mr. Brown; the saloon was run in Brown's name at the time I signed the note; Brown told me he had to run it in his name because Herr could not get a license; Mr. Herr furnished the money; did not have any conversation with Mr. Brown as to why it was not paid out of the proceeds of the saloon."

There was evidence tending to prove that Herr, in order

to induce the defendants, or some of them, to sign the note, represented that the money which would be taken in over the bar of the saloon, would be applied by Brown to the payment of the note. This in some instances was said by Herr in Brown's presence in the course of conversations in which Brown took part. To some he said that it was their intention to start another saloon in Fairmont, which he would attend to, thus leaving Brown in the sole charge of the saloon at Geneva, and that Brown would apply the proceeds of that business to the payment of the note, and that he "and Brown would make a good thing of it." These conversations in some instances were had with certain of the defendants while they were being bountifully plied with liquor in the saloon by both Herr and Brown. I quote the evidence in chief of Eli Schultz, one of the defendants:

"I think I signed it (the note) some time in February, 1882; that is what I understood afterwards.

"Came up to Geneva with Josiah Sheppard; Sheppard came to court house; I went into Herr's saloon; went to the stove; Herr says, 'Have something to drink,' and I did, and Brown says, 'Take another drink.'

"Herr came to the stove and says, 'Schultz, I have a note here and I want a good signer on it; I have some and I want some more; I want some money at the bank; Brown is going to run this saloon here and I will run another at Fairmont.' He says, 'I want to get you and Sheppard to sign it.'

"I says, I don't want to sign any note. He says, 'I have got Wintersteen and Johnson on the note; Brown and me will make a good thing out of it.'

"Brown spoke up and says, 'I am going to stay in this saloon and Herr will run the one in Fairmont,' and I told him I wouldn't sign the note unless Sheppard would sign it, and Brown says, 'You see if Sheppard will sign it.' I asked him and he said 'No;' we were standing by the window;

and when Herr came where I was Brown was behind the counter.

"Herr called us up to drink and we all drank together; Sheppard told him he wouldn't have anything to do with that; I stayed in the saloon about all day; Brown treated and Herr treated.

"Sheppard came in the saloon after lodge; I was playing pool with Brown; I don't know whether I treated or who treated, but they all kept treating; after awhile this note business was brought up again.

"And there were Brown and Herr and Josiah Sheppard and Carrier and I went back to playing pool, and that was the last I knew about it until Carrier awakened Sheppard and I up in the stable.

"Don't know just where the note was signed.

"In the afternoon Brown told me to sign the note; it was perfectly good, as they would take the money as it came in and pay it off; he said they were clearing any way $25 a day right along and sometimes $30 to $50; that was in the presence of Mr. Herr.

"Don't know what reply Herr made; he told me time and again that he was going to run both saloons; he said they would pay it right back as fast as they could get it; that they would pay it at the bank to Fifield & Fisher.

"Was not asked to sign a note to Mr. Brown.

"The saloon was run by Herr & Brown about fifteen months after the note was given.

Q. At the time you signed that note state whether or not you had any knowledge of the solvency or insolvency of Mr. Herr.

A. I didn't know anything about it. Mr. Brown told me the reason he didn't take the money (out of the proceeds) was because Amos always kicked up a fuss and raised hell with him when he said anything about it, and he kept saying that he would pay him just as soon as he got the money."

I have reluctantly copied the whole of this witness's evidence in chief, as it not only shows some of the nefarious means used to induce the defendants to sign the note, but clearly shows the active participation of Brown, the plaintiff, therein.

The "Sheppard" spoken of by the last witness, is not E. Sheppard, whose testimony I first quoted, but another man of that name, who is also a defendant.

George P. Wintersteen, defendant, testified as follows:

"I signed the note. Recollect the circumstances.

Q. State the circumstances and statements to induce it.

A. Mr. Herr came into the clerk's office; I was county clerk at the time."

(The plaintiff objects to the testimony for the reason that it is irrelevant and incompetent to state any conversation with defendant Herr, not in the presence of plaintiff. Objections overruled. Plaintiff excepts.)

"He says, 'Wintersteen, I am in close quarters. I am owing Mr. Brown some money and I want to raise a little more; Brown wants his money and I can get it with this note.' He says, 'I am doing a good business and I can raise it in a short time, if you will sign this note Brown would accept it.' He said if I did sign it I wouldn't be compelled, in all probabilty, to meet it. He insisted and said there was no question but what he could meet it, and that Brown wanted his money.

"I told him I would like to talk to Mr. Brown, and he said 'Brown is going to run this business here, and I am going to run the business in Fairmont.

"I met Brown. We had a talk about it to the effect that while I was not worth anything, that if I signed that note it would be simply accommodation, and that he must see that the note was paid by Amos before it was due. He said he didn't see any reason why it should not be paid before it was due, that he should stay right with him. He said that the business was certainly

paying, and that if he stayed there he would make it his business to look after it till it was paid; that he wanted his money that would come out of that.

. " It was my idea to charge Mr. Brown's mind to see that Herr did pay it. I knew of no demands being made up to that time that he didn't meet, but the business was very uncertain, and I thought if Mr. Brown looked after it, as he might do, it would be paid within a reasonable time.

Q. What was said about handling the proceeds of the sales from the saloons?

A. He said that he should be there and handling the proceeds of this business here, and that Herr would be at Fairmont.

Q. What did he say?

A. He said that it would be his aim to apply the proceeds to the payment of that note as fast as possible."

Several other of the defendants testified on the trial, but their evidence is chiefly corroborative of the foregoing, and lack of time and space forbid my copying further, except that of the clerk of district court, and the person going security for costs in reference thereto.

· V. Dworak testified as follows:

" I am clerk of this court.

Q. Do you recollect the filing and approving the securities for costs in your office in this case?

A. Yes, sir.

Q. By whom was it signed?

(The plaintiff objects to the question for the reason that it is immaterial, irrelevant, and incompetent, and not the best evidence. Objection overruled. Plaintiff excepts.)

A. It was signed by Mr. Burt. Mr. Herr brought him there.

Q. Had he any objections to signing in your presence?

(Plaintiff objects. Ground that it is immaterial, irrelevant, and incompetent, and not in the presence of plaintiff. Objections overruled. Plaintiff excepts.)

A. Mr. Herr and Mr. Burt met me on the street and wanted me to come in the office. Mr. Herr told me that Mr. Burt was going to sign as security for costs, and Burt asked me how much it would be, and I told him it might be fifteen or twenty dollars, and he signed it and I approved the bond. This is the bond."

The defendants offer in evidence the bond which is marked exhibit "B." To the introduction of which bond the plaintiff objects for the reason that it is irrelevant, immaterial, and incompetent. Objections overruled by court, Plaintiff excepts.

J. W. Burt testified:

"I signed the security for costs.

Q. At whose request?

(Plaintiff objects. Immaterial, irrelevant and incompetent. Objections overruled. Plaintiff excepts.)

Mr. Brown first asked me if I would sign it, that was at Alexandria. I told him I would see when I got to Geneva. Next Amos Herr asked me.

Q. What inducement did he offer you if you would sign?

(Plaintiff objects. Irrelevant, immaterial, and incompetent, and no foundation laid. Plaintiff excepts.)

A. He offered me ten dollars if I would sign the bond for security for costs in this case.

Q. Upon that you signed it?

A. I don't know that I did wholly upon that.

Q. Did he pay you anything?

A. He paid me five dollars. I had been asked by Brown at Alexandria to sign it. Herr was up here a day or two after that. Brown was working for Herr at Alexandria.

Q. What other consideration was there that made you sign the bond?

A. Dworak said he didn't think the amount would be over fifteen or twenty dollars, and that also that the time

had expired. I didn't believe it would be good, because the time had run out. I knew it was not good so far as I was concerned.

Q. You thought that you would get five or ten dollars for sticking your name where it wouldn't do any good?

A. Yes, sir; and Mr. Herr was owing me money that was repaying me.

Q. You considered that if he paid you anything it was coming in on your debt?

A. I didn't apply it that way."

The first assignment of error is based upon the overruling by the court by the objection of plaintiff to a question put by defendant to the witness, E. Sheppard, as follows:

"Q. State whether or not Mr. Herr was solvent at the time?" To which, after objection overruled, "He said he was all right for it himself, that was in the presence of Mr. Brown." I confess that I do not see the object of the question, but as the answer was entirely unprejudicial to the plaintiff, and amounted simply to a conversation between Herr and one of the other defendants in presence of the plaintiff, and was doubtless but a part of the measures taken by Herr and the plaintiff for the purpose of obtaining signatures to the note, I do not think that error will lie to this point.

Assignments 2, 3, 4, 5, and 6, relate to the evidence of the several parties who were sworn as witnesses on the part of the defense, and the principal objection is, that in some instances they were allowed over the plaintiff's objection to testify to the statements of Herr not made in the presence of Brown, as to the manner in which, and the means out of which, the said note was to be paid, etc. The answering defendants claim, in and by their answer, that the plaintiff and Herr conspired together to defraud the said defendants, by means of procuring them, by false representations and pretenses, to sign the said note with the said Herr, etc. There was some evidence before the jury

tending to prove this charge of the answer.    That being
the case it was competent to prove what was done or said
by either of the alleged conspirators in furtherance of the
common design, though not in the presence of the other.
I quote from Greenleaf on Evidence a part of the section
cited by counsel for defendants :

"Section 111.    The same principles apply to the acts
and declarations of one of a company of *conspirators* in re-
gard to the common design as affecting his fellows.    Here
a foundation must be laid by proof sufficient in the opinion
of the judge to establish *prima facie* the fact of conspiracy
between the parties or proper to be laid before the jury as
tending to establish such fact.    The connection of the in-
dividuals in the unlawful enterprise being thus shown, every
act and declaration of each member of the confederacy, in pur-
suance of the original concerted plan, and with reference to
the common object, is, in contemplation of law, the act and
declaration of them all ; and is therefore original evidence
against each of them."

These principles, though most often applied to criminal
cases, technically speaking, are equally applicable to cases of
conspiracy to perpetuate a fraud, and I deem them appli-
cable to the case at bar ; and that "the opinion of the
judge" that the proof was sufficient to establish *prima facie*
the fact of conspiracy was not erroneous.

The 7, 8, and 9 assignments refer to the admission of
evidence to prove that the plaintiff having been required
by the court to give security for costs in the action, he
being a non-resident of the county, and an order *nisi* dis-
missing the cause for the want of such security, the defend-
ant Herr aided the said plaintiff to procure such security,
even to the extent of hiring a party to become such security
and paying him therefor.    In an ordinary case and under
the usual issue in a civil action, this or similar evidence
would probably be inadmissible ; but under the issue in this
case, and following the other evidence tending to prove a

conspiracy and common design between Brown and Herr, to obtain the names of these defendants, and collect the money which it called for off of them, I think that this evidence was properly permitted to go to the jury.

The remaining assignments are of alleged errors for the giving of instructions by the court on its own motion and the refusal of the court to give those prayed for by the plaintiff. I copy the instructions at large.

The plaintiff asked the court to instruct the jury as follows:

"1st. The jury is instructed that the evidence is not sufficient on the part of said defendants to support a verdict in their favor, and you will find for the plaintiff and assess his damages at the face of the note in suit and interest thereon to the first day of the present term of the court, according to the tenor thereof.

"2d. The evidence is not sufficient to establish the claims of defendants, that the note was given without consideration.

"3d. The evidence is not sufficient to support the claim of defendants, that plaintiff was responsible for the drunkenness of any of the defendants when they signed the note.

"4th. The evidence is not sufficient to support the claim of defendants, that plaintiff and defendant Herr concocted or arranged any scheme to obtain to signatures to this note, and then divide the proceeds of the note.

"5th. Although there is evidence that Herr has aided plaintiff to procure security for costs in this case, yet that fact is not material, standing alone. Herr had a perfect right to befriend the plaintiff in that respect.

"6th. The defendant Shultz, who claims he was drunk when he signed the note, cannot take any advantage of that fact, even if you find such to be the fact, for the reason that afterwards when he knew he had signed the note, at a time when Herr told him he had got about all to sign it, he did not ask Herr to take his name off or direct Herr not to de-

liver it to Brown; he had then by his conduct when sober ratified his act of signing the note.

"7th.   Any conversation had by any of the parties with defendant Herr, when not in the presence and hearing of the plaintiff, is not binding upon the plaintiff and should not be considered by the jury in making up their verdict.

"8th.   The fact that defendants J. Sheppard and Shultz, after this note had become due, went so far as to sign a new note in renewal of this note, is a circumstance which the jury should properly take into consideration in making up their verdict.

"9th.   Unless you are satisfied by a fair preponderance in favor of the defendants, that the plaintiff fraudulently entered into a scheme to defraud the defendants, and that Herr was to have a part of the money, and that plaintiff assisted to get the note in suit for that purpose and not for the purpose of securing his debt, then you shall find for the plaintiff.

"10th.   The fact that plaintiff took this note in renewal of a note which was secured by a chattel mortgage, and that plaintiff released his mortgage after this note was given, is of no advantage to these defendants.   It was proper for plaintiff to release his mortgage upon the delivery of the note sued upon."

Each of which the court refused to give, to which rulings plaintiff excepted.

The court then charged the jury as follows:

"Gentlemen of the Jury—This action is brought by the plaintiff upon a promissory note signed by Herr and the other defendants herein, signed, made, executed and delivered to the plaintiff, and that the same remains unpaid, and that there is due to him upon that the face of the note and the interest.   To this petition of the plaintiff the defendants first admit the making of the note, hence it would follow that the plaintiff would be entitled to recover unless the allegation of the defendants' answer, sustained

by the proof, would be sufficient to overcome the claim of the plaintiff. For defense the defendants allege:

"*First.* That they are sureties only upon this note; that they signed the same without consideration, and that the signatures were obtained by the plaintiff and Herr with the common joint intention of swindling the sureties, by collecting from them the amount of the note.

"*Second.* The answer sets forth that the sureties signed the note upon the representations of Herr and the plaintiff that the plaintiff would have charge of the saloon in Geneva, and would receive the profits and moneys arising from the saloon here, and apply the profits upon the payment of this note as received by him.

"*Third.* To this, for reply, the plaintiff enters a general denial.

"*Fourth.* Either of these defenses, if established by the testimony, would operate as a discharge of the sureties to this note.

"*Fifth.* Fraud is never presumed, but must be proved by the party asserting it by a fair preponderance of the proof, and it may be established as any other fact, by circumstances and circumstantial evidence. To establish the defense in this case, it is incumbent upon the defendants to establish their allegations by a fair preponderance of the proof. If they have failed to do this it will be your duty to find for the plaintiff.

"*Sixth.* The liability of surety is only secondary to that of principal, and if you find from evidence that the defendant Herr is principal, and that the other defendants are sureties only, and that no real debt is due from Herr to the plaintiff, and that the note sued upon was obtained for the purpose of defrauding the sureties of Herr, and not for a *bona fide* debt, the verdict should be for the defendants. If you shall find from the proof in this case that there was a common purpose existing between Herr and the plaintiff to obtain the signatures of these defendants to this note,

with the intention of defrauding all or any one of them, and that they did so obtain their signatures by furtherance of that common purpose, or by means of misrepresentations in furtherance of the common purpose, then you shall find for the defendants, except the defendant Herr.

"*Seventh.* If you find from the evidence that the plaintiff obtained these signatures or assisted the defendant Herr to obtain the signatures of these alleged sureties, or any of them, upon the representation that he would receive the money and apply the proceeds of the money so received in the business of running this saloon to the payment of this note, and you shall further find from the testimony that he did manage the business and receive the money, and that they were sufficient in amount to have cancelled or have paid this note, then the court charges you that the plaintiff's turning the money over to Herr was a constructive fraud as against the sureties.

"*Eighth.* You are judges of the credibility of each and every witness, and you shall give to the testimony of each and every witness such weight as in consideration of all the facts and circumstances you shall deem the same entitled to, and you have the right to take into consideration the bearing of the witness upon the stand, their relations or their apparent relations, and their relations to each other and their interest in this action; you have also the right to take into consideration, as you shall find from the evidence, the means used to obtain the signatures of the alleged sureties and the representations made to them, and all the facts that have been proven before you, and also the conduct, action, and doings of the defendants themselves.

"*Ninth.* You should be governed, in coming to a conclusion in this case, by the evidence, and that alone, given before you, and not allow yourselves to be governed by remarks or statements of counsel not warranted by the evidence, but by the evidence alone. If you find for the plaintiff upon the evidence, you should find the amount of the

9

note and interest thereon as expressed therein from its date to the day of the first day of this term of the court. If you find for the defendants you will simply find for the defendants, except the defendant Herr."

The first seven of the instructions prayed by the plaintiff were properly [refused, for the reason that to give them would take from the jury the consideration of the evidence of fact, which it is their peculiar province to weigh and decide.

The eighth and ninth instructions prayed for are not specially objectionable, except that the ninth goes too far. It would tell the jury that it was necessary to the defense that they should believe from the evidence that it was a part of the scheme and common design of Brown and Herr, that Herr was to have a part of the money called for by said note, and that Brown assisted to get said note for the purpose of Herr's getting a part of said money. The fraudulent conspiracy is equally available to the defendants as a defense, although it might appear that it was the design of the conspiracy that either Brown or Herr should enjoy the whole of the proceeds of the note; and also with the exception that neither the eighth or tenth instruction prayed is within the pleadings in the case.

Upon a careful consideration of the rather lengthy charge as given, I think that it quite fairly and fully presented the case to the jury, and that as well in detail as in whole it expresses the law of the case.

The judgment of the district court is affirmed.

JUDGMENT AFFIRMED.

THE other judges concur.