## JOSEPH S. BARTLEY V. STATE OF NEBRASKA.

### FILED JANUARY 3, 1898.   No. 9347.

1. **Indictment and Information:** MOTION TO QUASH. On a motion to quash an information, the district court will not inquire into the validity of the warrant of arrest issued by the examining magistrate.

2. **Criminal Law:** ABATEMENT: EMBEZZLEMENT. In a prosecution for the crime of embezzlement, the pendency against the accused of a former information in the district court of another county charging him with the embezzlement of the same property within that county, is no ground for abatement.

3. ———: INFORMATION: DEMURRER TO COUNT. Error cannot be predicated upon the overruling of a demurrer to a count in the information, where a *nolle prosequi* is subsequently entered to such count.

4. ———: ———: CAPTION: VENUE. An information, in the caption and venue of which a given county and state are named, which charges that the defendant "in the county aforesaid, then and there being in said county," did commit a given crime, sufficiently alleges that the offense was committed in the county stated in the caption and venue.

5. ———: ———: VENUE. The place of the commission of an offense charged in one of the counts of the information is sufficiently set forth by averment that the defendant, "in the county aforesaid," did commit the acts constituting the offense, when in a former count the county and state are definitely stated.

6. ———: ———: ELECTION AS TO COUNTS. An election by the prosecutor to proceed alone under one count does not so far take the other counts out of the information as to destroy the effect of a reference to them as to time and place.

7. **County Attorney:** RIGHT TO INSTITUTE CRIMINAL PROCEEDING. A county attorney of the proper county may institute a criminal proceeding against a state treasurer for the embezzlement of the moneys of the state, notwithstanding such prosecutor had received no direction from the auditor of public accounts to take such step.

8. **Embezzlement:** INFORMATION. An information for embezzlement is sufficient if it sets forth the crime in the language of the statute creating it, without averring the particular acts in which the offense consisted.

9. ———: ———: STATE TREASURER. An indictment against a state treasurer, which charges the embezzlement to his own use of a certain sum of money belonging to the state, is sufficient without

an allegation that a demand for the money was made upon him by his successor in office.

10. **Information**: Election as to Counts. Where different felonies of the same general character or grade are charged in different counts of an information, it is within the discretion of the trial court to require the prosecutor to elect as to counts. (*Korth v. State*, 46 Neb. 632.)

11. ———: ———. No election is required between counts charging the same offense.

12. **Jury**: Challenge: Review. Error cannot be predicated upon the overruling of a challenge to a juror for cause, where the record fails to disclose that the complaining party exhausted his peremptory challenges.

13. **Embezzlement**: Conviction: Evidence. The evidence in the case is sufficient to sustain a conviction for the embezzlement of the moneys of the state.

14. **Negotiable Instruments**: Warrants. Warrants drawn by the auditor of public accounts upon the state treasury are not negotiable instruments.

15. **Banks and Banking**: Payment of Check: Credit. The giving of credit as a deposit for the amount of a check, by the bank upon which it is drawn, is, in contemplation of law, a payment of the check in money, to the same extent as though the currency had been paid over the counter on the check and immediately redeposited by the payee.

16. **Embezzlement**: Evidence: State Treasurer. A state treasurer who, for an unauthorized purpose, draws a check on a state depository bank having money of the state therein, which he delivers to the payee with intent to defraud the state, and the bank on presentation of the check places the amount thereof to the credit of a third party whom the payee represents in the transaction, and at the same time charges the account of the state with a like sum, is guilty of the embezzlement of the money of the state, within the meaning of section 124 of the Criminal Code.

17. **Evidence**: Embezzlement: Correspondence. Where a state treasurer employed a bank to negotiate the sale of a warrant which was the property of the state, the correspondence of such bank necessary to effect such sale is admissible in evidence in a prosecution of the treasurer for embezzlement of the amount subsequently used to take up such warrant, where there exists such a relation between the sale and the payment of the warrant that the motive in the latter transaction is illustrated by the facts incident to the former.

18. **Officer**: Embezzlement: Estoppel. In a prosecution for embezzlement, one who has filled out his entire term of office cannot be

heard to urge as a defense that when the embezzlement took place he was not an officer *de jure*. It is immaterial in such case whether he was an officer *de jure* or *de facto*.

19. **Evidence:** EXPERT ACCOUNTANT: BOOKS. In a prosecution for embezzlement or other crime, where the books, records, papers, and entries are voluminous and of such a character as to render it difficult for the jury to arrive at a correct conclusion as to amounts, an expert accountant may be allowed to examine such books, etc., and testify as to the result of his examination, when such books, etc., are in the court room subject to inspection by the accused.

20. **Instructions:** CONSTRUCTION. Instructions must be construed together, and if then they correctly announce the rule applicable to the issues and evidence, they will be upheld, even though a single paragraph, standing alone, might be faulty.

21. ———: REASONABLE DOUBT. *Held*, That the instruction defining a reasonable doubt did not deny to the accused the benefit of a reasonable doubt arising from the lack of evidence in the case, and that it was not error to state in such instruction: "You are not at liberty to disbelieve as jurors if from all the evidence you believe as men. Your oath imposes on you no obligation to doubt where no doubt would exist if no oath had been administered."

22. ———: ———. The court charged the jury that: "The law raises no presumption against the defendant. On the contrary, the presumption of law is in favor of his innocence. This presumption of innocence continues through the trial until every material allegation in the information is established by the evidence to the exclusion of all reasonable doubt." *Held*, Equivalent to the rule that the presumption of innocence is a matter of evidence, to the benefit of which the accused is entitled.

23. **Embezzlement:** MONEY: FINDING OF VALUE. In case of conviction under an information charging the embezzlement of money, a verdict finding the amount of money embezzled to be a specified number of dollars is a sufficient finding of value.

ERROR to the district court for Douglas county. Tried below before BAKER, J. *Affirmed.*

The facts are stated in the opinion.

*Charles O. Whedon* and *T. J. Mahoney,* for plaintiff in error:

The warrant under which the arrest was made was invalid and the information should have been quashed.

(*Rafferty v. People*, 69 Ill. 111; *Garcia v. Sanders*, 35 S. W. Rep. [Tex.] 52.)

The plea in abatement should have been sustained on the ground that another criminal action charging defendant with the same offense was pending in another county. (*State v. North Lincoln S. R. Co.*, 34 Neb. 634; *Monroe v. Reid*, 46 Neb. 331; *Gamsby v. Ray*, 52 N. H. 513; *Commonwealth v. Churchill*, 5 Mass. 174; *Coaldale Brick & Tile Co. v. Southern Construction Co.*, 19 So. Rep. [Ky.] 45; *Parker v. Colcord*, 2 N. H. 36; *Demond v. Crary*, 1 Fed. Rep. 480; *Curtis v. Piedmont Lumber, Ranch & Mining Co.*, 13 S. E. Rep. [N. Car.] 944.)

The information fails to allege that the warrant was lawfully issued or that it was of any value, and is therefore insufficient. (*State v. Babcock*, 22 Neb. 38; *State v. Moore*, 37 Neb. 507.)

The information is defective in failing to allege that the warrant was issued upon a proper voucher. (*State v. Moore*, 36 Neb. 579; *Moore v. Garneau*, 39 Neb. 511.)

The count upon which defendant was convicted does not mention the county wherein the crime was alleged to have been committed, and the count naming the county was abandoned. The state and county are mentioned in the caption, but the caption is no part of the information. The information is therefore insufficient, and will not support a conviction. (*People v. Jewett*, 3 Wend. [N. Y.] 319; *State v. McCarty*, 54 Am. Dec. [Wis.] 150; *Commonwealth v. Stone*, 3 Gray [Mass.] 453; *Rose v. State*, 1 Ala. 28; *State v. Freeman*, 21 Mo. 481; *Mitchell v. State*, 8 Yerg. [Tenn.] 514; *English v. State*, 4 Tex. 125; *Allen v. State*, 5 Wis. 329; *State v. Emmett*, 23 Wis. 632; *McCoy v. State*, 22 Neb. 418.)

An information must charge explicitly all that is essential to constitute an offense and cannot be aided by intendment. (*Smith v. State*, 21 Neb. 552; *Commonwealth v. Smart*, 6 Gray [Mass.] 15.)

Whatever is to be proven must be pleaded in the information. (*State v. Hebel*, 72 Ind. 361; *State v. Hayes*, 78 Mo. 307.)

The manner in which the money was used should have been stated for the purpose of showing whether the use was illegal. The charge that defendant converted the money to his own use was a legal conclusion rather than a statement of fact. (*State v. Brandt,* 41 Ia. 593; *State v. Parsons,* 54 Ia. 405; *Hoyt v. State,* 50 Ga. 313.)

No demand is alleged in the information, and for that reason it fails to show an improper neglect or refusal to pay. (*State v. Munch,* 22 Minn. 67; *Bolln v. State,* 51 Neb. 581.)

The indictment contained several counts for the same act and the prosecuting attorney should have been compelled to elect. (*State v. Lawrence,* 19 Neb. 307; *Aiken v. State,* 41 Neb. 263; *Blodgelt v. State,* 50 Neb. 121.)

Challenges to jurors having opinions as to defendant's guilt should have been sustained. (*Curry v. State,* 4 Neb. 545; *Carroll v. State,* 5 Neb. 31; *Olive v. State,* 11 Neb. 1; *Cowan v. State,* 22 Neb. 519; *Miller v. State,* 29 Neb. 437; *Owens v. State,* 32 Neb. 167.)

The misconduct of the prosecuting attorney in referring, in presence of jurors, to attempts at bribery is ground for reversal. (*Thompson v. People,* 4 Neb. 531.)

References to error in the conduct of the trial judge in asking questions and in making remarks during the trial: *State v. Harkin,* 7 Nev. 377; *State v. Ah Tong,* 7 Nev. 148; *Hudson v. Hudson,* 16 S. E. Rep. [Ga.] 349; *Fager v. State,* 22 Neb. 340; *Chicago, R. I. & P. R. Co. v. Archer,* 46 Neb. 914.

The evidence was insufficient to sustain a verdict against defendant, and the motion to direct a verdict in his favor was erroneously overruled. (*State v. McFetridge,* 84 Wis. 473; *State v. Hill,* 47 Neb. 456; *Suydan v. Merrick County,* 19 Neb. 159; *Miller v. Wheeler,* 33 Neb. 765; *Miller v. State,* 16 Neb. 179; *Commonwealth v. Shepard,* 83 Mass. 575; *Hamilton v. State,* 60 Ind. 193; *Pryor v. Commonwealth,* 2 Dana [Ky.] 298; *Garner v. State,* 5 Yerg. [Tenn.] 160; *Thalheim v. State,* 20 So. Rep. [Fla.] 938; *Commonwealth v. Merrifield,* 4 Met. [Mass.] 468;

*Lewis v. State*, 28 Tex. App. 140; *Commonwealth v. Howe*, 132 Mass. 250; *Carr v. State*, 16 So. Rep. [Ala.] 155; *Territory v. Marinez*, 44 Pac. Rep. [Ariz.] 1089; *Queen v. Brady*, 26 U. Can. Q. B. 13; *Tucker v. State*, 16 Ala. 670; *Lindsay v. State*, 19 Ala. 560; *State v. Copp*, 15 N. H. 212; *State v. McDonald*, 24 Pac. Rep. [Mont.] 628; *Turley v. State*, 3 Humph. [Tenn.] 323; *Jordt v. State*, 31 Tex. 571; *Banks v. State*, 28 Tex. 644; *Johnson v. State*, 11 O. St. 324.)

The state treasurer's bond, not having been approved within the time fixed by statute, was erroneously admitted in evidence. (*State v. Lansing*, 46 Neb. 514.)

The treasury warrant introduced in evidence was different from that copied in the information and should have been excluded. (*State v. Owen*, 73 Mo. 440; *Sharley v. State*, 54 Ind. 168; *Haslip v. State*, 10 Neb. 590; *Prehm v. State*, 22 Neb. 676; *Williams v. People*, 101 Ill. 382.)

The depository bond of the Omaha National Bank was erroneously admitted in evidence. It was not executed according to the requirements of statute. (*Richardson v. Woodruff*, 20 Neb. 137; *Reed v. Merriam*, 15 Neb. 325; *Sutton v. Stone*, 4 Neb. 319; *Hendrix v. Boggs*, 15 Neb. 469; *Baldwin v. Merriam*, 16 Neb. 199; *Shelley v. Towle*, 16 Neb. 194; *Sullivan v. Merriam*, 16 Neb. 157; *Seaman v. Thompson*, 16 Neb. 546; *Bendexen v. Fenton*, 21 Neb. 184; *Gue v. Jones*, 25 Neb. 634; *Adler v. Green*, 18 W. Va. 201; *Easton v. Ormsby*, 27 Atl. Rep. [R. I.] 218; *Williams v. State*, 6 L. R. A. [Fla.] 821; *Chilton v. People*, 66 Ill. 501.)

Because the jury did not ascertain and declare in their verdict the value of the property embezzled, the court had no authority to render a judgment. (*Armstrong v. State*, 21 O. St. 357; *Highland v. People*, 1 Scam. [Ill.] 391; *Sawyer v. People*, 3 Gil. [Ill.] 54; *Tobin v. People*, 104 Ill. 565; *Thompson v. People*, 125 Ill. 256; *Shines v. State*, 42 Miss. 331; *Ray v. State*, 1 G. Greene [Ia.] 316; *State v. Redman*, 17 Ia. 329; *Locke v. State*, 32 N. H. 106; *McCoy v. State*, 22 Neb. 418; *McCormick v. State*, 42 Neb. 866; *Fox v. Phelps*, 17 Wend. [N. Y.] 400; *State v. Doepke*, 5 Mo. App. 590; *Cannon v. State*, 18 Tex. App. 172.)

The seventeenth instruction was erroneous because it gave undue prominence to the testimony of one class of witnesses. (*Markcl v. Swobe*, 11 Neb. 213; *Kersenbrock v. Martin*, 12 Neb. 376; *City of Lincoln v. Beckman*, 23 Neb. 677; *First Nat. Bank of Denver v. Lowrey*, 36 Neb. 290; *Rising v. Nash*, 48 Neb. 597.)

By the twenty-first instruction the jury was told that a reasonable doubt must be one arising from a candid and impartial investigation of all the evidence in the case. This is not a correct statement of the law. A doubt may arise from want of evidence. (*Carr v. State*, 23 Neb. 749; *Cowan v. State*, 22 Neb. 519; *Childs v. State*, 34 Neb. 236; *Garrison v. People*, 6 Neb. 274; *Long v. State*, 23 Neb. 33.)

*C. J. Smyth, Attorney General*, and *Ed P. Smith, Deputy Attorney General*, for the state:

The warrant of arrest contained a sufficient recital of the substance of the offense. (*State v. Hallback*, 18 S. E. Rep. [S. Car.] 919; *Gay v. De Werff*, 17 Ill. App. 417; *Murphey v. State*, 55 Ala. 252; *Rhodes v. King*, 52 Ala. 272; *Jennings v. State*, 13 Kan. 80.)

If the warrant of arrest was defective accused should have moved to quash it before proceeding further. He waived any defect in the warrant. (*Redmond v. State*, 12 Kan. 138; *Alderman v. State*, 24 Neb. 97; *State v. Downs*, 8 Ind. 42.)

The pendency of an information in one court is no ground for a plea in abatement to another information in the same court, or another court of concurrent jurisdiction, for the same cause. (*Commonwealth v. Drew*, 3 Cush. [Mass.] 282; *Hardin v. State*, 22 Ind. 349; *Commonwealth v. Murphy*, 11 Cush. [Mass.] 472; *Commonwealth v. Berry*, 5 Gray [Mass.] 93; *O'Meara v. State*, 17 O. St. 87; *Smith v. Commonwealth*, 104 Pa. St. 339; *Eldridge v. State*, 9 So. Rep. [Fla.] 448; *Commonwealth v. Cody*, 42 N. E. Rep. [Mass.] 575.)

The reference in the third count of the information to the county already named in the first count and in the

caption sufficiently designated the county wherein the offense was committed, though a conviction under the first count was abandoned. (*Rema v. State*, 52 Neb. 375; *Smith v. State*, 21 Neb. 552; *Moore v. Fedewa*, 13 Neb. 379; *Alderman v. State*, 24 Neb. 97; *Mount v. State*, 14 O. 295; *State v. McKee*, 1 Bailey [S. Car.] 651; *United States v. Farring*, 4 Cranch [U. S. C. C.] 465; *United States v. Shoemaker*, 2 McLain [U. S.] 114; *Reynolds v. State*, 3 Kelly [Ga.] 53; *Commonwealth v. Wade*, 17 Pick. [Mass.] 395; *Evans v. State*, 24 O. St. 209; *Fisk v. State*, 9 Neb. 63; *Boles v. State*, 13 Tex. App. 650; *Hutto v. State*, 7 Tex. App. 44; *Wills v. State*, 8 Mo. 45; *Commonwealth v. Clapp*, 16 Gray [Mass.] 237; *Phillips v. Fielding*, 2 H. Bl. [Eng.] 131; *Rex v. Dent*, 1 C. & K. [Eng.] 249; *United States v. Hendric*, 2 Sawyer [U. S.] 477; *State v. Nelson*, 29 Me. 329; *State v. McAllister*, 26 Me. 374.)

The information alleges all the statutory ingredients of the offense charged, and the objection that it does not state the facts showing the alleged conversion is without merit. (*Whitman v. State*, 17 Neb. 224; *Smith v. State*, 4 Neb. 277; *Wagner v. State*, 43 Neb. 5; *Hodgkins v. State*, 36 Neb. 160; *State v. Jamison*, 74 Ia. 602; *Claassen v. United States*, 142 U. S. 140; *Hoyt v. State*, 50 Ga. 313; *Gibbs v. State*, 41 Tex. 491; *Reed v. McRill*, 41 Neb. 207; *Sanford v. Jensen*, 49 Neb. 766.)

Before resting its case the state elected as to counts. There was therefore no prejudicial error in the order overruling accused's motion to require plaintiff to elect. (*Korth v. State*, 46 Neb. 631.)

Accused's peremptory challenges not having been exhausted, error, if any, in overruling challenges to jurors was without prejudice. (*Brumback v. German Nat. Bank of Beatrice*, 46 Neb. 540; *Jenkins v. Mitchell*, 40 Neb. 664.)

References in reply to charges of misconduct on part of the prosecuting attorney: *Vaughn v. Crites*, 44 Neb. 812; *Gandy v. State*, 13 Neb. 445; *Hoover v. State*, 48 Neb. 184.

The motion to direct a verdict for defendant was prop-

erly overruled. (*State v. Harwood*, 36 Kan. 237; *Stevens v. Parks*, 73 Ill. 388; *Oddie v. National City Bank of New York*, 45 N. Y. 735; *State v. Krug*, 12 Wash. 288; *People v. McKinney*, 10 Mich. 54; *Commonwealth v. Moore*, 44 N. E. Rep. [Mass.] 613; *People v. Bringard*, 39 Mich. 22; *State v. Baumhager*, 28 Minn. 226; *State v. Palmer*, 40 Kan. 474.)

The official bond was competent evidence. (*Commonwealth v. Logue*, 160 Mass. 551; *State v. Goss*, 69 Me. 22; *State v. Minns*, 26 Minn. 183.)

Admission of the treasury warrant in evidence was not prejudicial error. (*Davis v. State*, 51 Neb. 301.)

There was no error in admitting in evidence certain pages of the book of account of the Omaha National Bank. (*Bunker v. Shed*, 49 Mass. 150; *Nicholls v. Webb*, 8 Wheat. [U. S.] 326; *Nourse v. McCay*, 2 Rawle [Pa.] 70; *Mathias v. O'Neill*, 94 Mo. 520; *Imhoff v. Richards*, 48 Neb. 590; *Larabee v. Klosterman*, 33 Neb. 150.)

There was no error in admitting the depository bond in evidence. (*Luce v. Foster*, 42 Neb. 818.)

The books, records, and other public documents kept in the office of the state treasurer, and the official statement filed by him with the auditor of public accounts are competent evidence to prove the receipts and disbursements of such officer. (*State v. Ring*, 29 Minn. 78; *Humphrey v. People*, 18 Hun [N. Y.] 393; *People v. Flock*, 59 N. W. Rep. [Mich.] 237; *Stanley v. State*, 88 Ala. 154; *Osborne v. State*, 27 N. E. Rep. [Ind.] 345; *Strong v. State*, 75 Ind. 440; *Coleman v. Commonwealth*, 25 Gratt. [Va.] 865.)

It was proper to permit the expert accountant to testify to the result of his examination of the books of the state treasury. (*State v. Findley*, 101 Mo. 217; *Hollingsworth v. State*, 111 Ind. 289; *Masonic Mutual Benefit Society v. Lackland*, 97 Mo. 138.)

The statement in the verdict of the amount of money embezzled was a sufficient finding as to value. (*State v. Hood*, 51 Me. 363; *Cook v. State*, 49 Miss. 8; *State v. White*, 25 Wis. 359; *Schoonover v. State*, 17 O. St. 294; *Smith v.*

*State,* 60 Ga. 430; *Commonwealth v. Butler,* 144 Pa. St. 568; *State v. Knox,* 17 Neb. 683; *Gady v. State,* 83 Ala. 51.)

Other references: *Norris v. State,* 25 O. St. 217; *Connor v. State,* 29 Fla. 455; *Commonwealth v. Taylor,* 105 Mass. 172; *Commonwealth v. Wood,* 142 Mass. 459; *Commonwealth v. Karpowski,* 167 Pa. St. 225; *State v. Moore,* 50 Neb. 88; *Willis v. State,* 43 Neb. 102; *Roberts v. People,* 9 Colo. 458; *Hemingway v. State,* 8 So. Rep. [Miss.] 317; *State v. Cowan,* 74 Ia. 53.

NORVAL, J.

The defendant, Joseph S. Bartley, was convicted in the district court of Douglas county of embezzlement of moneys belonging to the state while he was the treasurer thereof. Besides a fine in double the amount found by the jury to have been embezzled, a term of twenty years in the penitentiary was the punishment imposed, and to obtain a reversal of said judgment and sentence is the purpose of this proceeding.

The information filed in the court below by the county attorney was in eight counts, the first and second of which charged the embezzlement of a certain warrant, drawn by the auditor of public accounts upon the state treasury for the sum of $180,101.75. The remaining six counts set forth, in different forms, the embezzlement on the 2d day of January, 1897, of $201,884.05 of the moneys belonging to the state, which defendant received by virtue of his said office of state treasurer. At the close of the testimony for the state, the county attorney entered a *nolle prosequi* as to the first two counts of the information, and upon the trial the accused was found guilty under the third count, but was acquitted as to all the other counts upon which the prosecutor elected to rely for a conviction.

At this time it is not deemed essential to mention the various pleas, motions, and demurrers filed preceding the selection of the jury, or to give a history of the trial, or any statement of the facts revealed by the record.

Such matters will be stated as we proceed with the investigation of the grounds urged for a reversal, at least so far as the same may seem necessary to an understanding of the propositions argued.

The first contention made in the brief of counsel for the accused is that the information under which the conviction was obtained should have been quashed, because of the alleged invalidity of the warrant on which the arrest was made. The original complaint was filed with the police judge of the city of Omaha, and the warrant in question was issued thereon, which recited that a complaint had been made under oath before said judge charging that "Joseph S. Bartley, on or about the 25th day of April, A. D. 1895, within said county and within the city of Omaha, did commit the offense of embezzlement." The argument is that the warrant of arrest does not recite the substance of the accusation against the prisoner as required by section 288 of the Criminal Code, and therefore is void. The warrant of arrest was not assailed before the magistrate, but the defendant waived a preliminary examination, and entered into a recognizance for his appearance in the district court to answer the charges preferred against him in the complaint. Objection to the sufficiency of said warrant was made for the first time in the trial court after the filing of the information therein by the county attorney. The question with which we have to deal is not whether the warrant of arrest should have been quashed on a proper objection before the magistrate, but whether the defects in said warrant have been waived by the failure to seasonably take advantage of the same. There is no room for doubt that if the warrant of arrest was bad, the defect was not available to the defendant after he waived his preliminary examination, and had entered into a recognizance for his appearance in the district court. He was not thereafter held by the writ, as that instrument had already performed its office, but stood upon his recognizance. Whether this warrant of arrest was good

or bad was not a proper subject of inquiry in the district court. (*Alderman v. State*, 24 Neb. 97; *State v. Downs*, 8 Ind. 42; *Williams v. State*, 88 Ala. 80; *State v. Stredder*, 3 Kan. App. 631; *State v. McManus*, 4 Kan. App. 247.)

In the first case cited this court decided that the district court, upon a motion to quash an information, will not inquire into the validity of the complaint upon which the preliminary examination before the magistrate was had, the crime alleged being the same. The court in the opinion say: "We know of no rule of law which would entitle a person accused of a crime to attack the complaint upon which his preliminary examination was had, after the return of the indictment or information. So far as the power of the court to hold its jurisdiction over him is concerned, the complaint had served its purpose, and could not then be made the subject of attack." It follows from the doctrine enunciated in that case that the defects in this warrant, which might have been fatal if seasonably presented before the magistrate, but which were not there raised, are not available in the district court on motion to quash the information. The two cases cited by counsel for the accused are not in point. They tend to support the proposition that the warrant is fatally defective, but have no bearing whatever upon the question whether such objection can be urged for the first time on motion to quash the information.

The record discloses that the defendant was arraigned before the county court of Lancaster county on the 19th day of April, 1897, upon a complaint charging the accused with the embezzlement of the same auditor's warrant and identical moneys mentioned in the information herein; that the defendant waived examination and entered into a recognizance for his appearance before the district court of said county at the next term thereof; that a transcript of the proceedings was lodged in the office of the clerk of said court on the following day, where on May 27 the information was filed by the county attorney, who on the same day entered a *nolle prosequi;*

that the transcript of the proceedings before the police judge of the city of Omaha was filed in the district court of Douglas county on April 29, and that the information upon which the accused was tried was filed therein by the county attorney on May 15. A plea in abatement was filed on May 27, the county attorney replied thereto, and the plea in abatement was overruled by the trial court, which decision we are called upon to review.

In civil cases the rule is that the pendency of a former suit between the same parties may be pleaded in abatement where the judgment in such action would be a bar to a judgment in the second suit brought in another court of concurrent jurisdiction. (*State v. North Lincoln S. R. Co.*, 34 Neb. 634; *Monroe v. Reid*, 46 Neb. 316.) The attorney general argues that this doctrine is not extended to prosecution for crimes. A former indictment or information pending in the same court for the same criminal offense constitutes no ground of abatement. In *O'Meara v. State*, 17 O. St. 515, Welch, J., observed: "It is insisted, in the first place, that the indictment under which the defendant was convicted is a nullity because of the pendency of a former indictment for the same offense, at the time it was found. We know of no such law. The last indictment is as valid as the first. Two indictments for the same offense are often pending at the same time. The state can only proceed upon one of them, but may elect upon which it will proceed. Of course, the right of election implies that both are good and lawful indictments." Chief Justice Shaw, in delivering the opinion of the court in *Commonwealth v. Drew*, 57 Mass. 279, used this language: "It appears to us to be a settled rule of law, that the pendency of one indictment is no good plea in abatement to another indictment for the same cause. Whenever either of them—and it is immaterial which—is tried, and a judgment rendered on it, such judgment will afford a good plea in bar to the other, either of *autrefois convict* or *autrefois acquit*. But where it is found that there is some mistake in an indictment, as a wrong

name or addition, or the like, and the grand jury can be again appealed to, as there can be no amendment of an indictment by the court, the proper course is for the grand jury to return a new indictment, avoiding the defects in the first; and it is no good ground of abatement, that the former has not been actually discontinued, when the latter is returned." The authorities are quite uniform in holding that the pendency of a former indictment for the same offense in the same court is no ground for abatement. (Wharton, Criminal Pl. & Pr. sec. 452; *Dutton v. State,* 5 Ind. 533; *Hardin v. State,* 22 Ind. 347; *Smith v. Commonwealth,* 104 Pa. St. 339; *Commonwealth v. Murphy,* 65 Mass. 472; *Commonwealth v. Berry,* 71 Mass. 93; *Commonwealth v. Cody,* 42 N. E. Rep. [Mass.] 575; *Eldridge v. State,* 9 So. Rep. [Fla.] 448; *State v. Security Bank,* 51 N. W. Rep. [S. Dak.] 337; *State v. Curtis,* 29 Kan. 386; *State v. Hastings,* 86 N. Car. 596; *State v. Lambert,* 9 Nev. 321; *Bailey v. State,* 11 Tex. App. 140.)

Counsel for the accused insist the doctrine that a former indictment in the same court is no ground for abatement is not applicable to prosecutions for the same offense in two courts having concurrent jurisdiction thereof. We think this is true. Undoubtedly, where two courts have concurrent jurisdiction of a crime, the court first obtaining jurisdiction acquires exclusive control to the exclusion of the other. (Wharton, Criminal Pl. & Pr. sec. 452, and cases there cited.) It logically follows that the pendency of a prior indictment or information in another court having jurisdiction of the identical offense may be pleaded in abatement of the second prosecution. (See 1 Wharton, Criminal Law sec. 521; *State v. Tisdale,* 2 Dev. & Bat. [N. Car.] 160.) The justices and district courts have concurrent jurisdiction of misdemeanors committed in their respective counties. Therefore, if an indictment should be returned by the grand jury to the district court charging the defendant with an assault and battery and during the pendency thereof, and before trial, the defendant should be arrested upon a com-

plaint filed before a justice of the peace of the same county charging him with the commission of the identical offense, there is no reason why the pendency of the indictment should not be ground for abating the prosecution before the justice. Both tribunals have concurrent jurisdiction of the same criminal act. The complaint and information filed against Bartley in Lancaster county charged the crime of embezzlement as does the information herein, but the same criminal acts were not alleged. The jurisdiction of the district courts of Lancaster and Douglas counties is not concurrent in criminal actions, in such a sense as to give each original jurisdiction over offenses committed in either county. It is clear the pendency of the criminal action against the defendant in the Lancaster district court was not a bar to this prosecution. Manifestly this is true, both upon reason and authority. Neither a conviction nor acquittal of the offense charged in one information would have constituted a bar to the prosecution under the other information, since in one the venue was laid in Douglas county, while in the other the offense is stated to have been committed in Lancaster county. This being true, unquestionably the fact that an information was pending against the accused in Lancaster county for the embezzlement of the same auditor's warrant and moneys of the state described in the information herein would not abate this prosecution. The authorities cited by counsel for the defendant are easily distinguishable. All are civil cases except *Commonwealth v. Churchill*, 5 Mass. 174, which last case states that the pendency of a prior information or indictment for a crime will not abate a subsequent prosecution for the same offense.

It is argued that the court below erred in not sustaining the demurrer interposed to the first count of the information, which charged the embezzlement by the defendant of a certain warrant drawn by the auditor of public accounts upon the state treasury. This ruling is not available, since it was not prejudicial to the rights of

the accused, owing to the fact that the county attorney at the close of the state's testimony entered a *nolle prosc-qui* as to the first and second counts of the information. (*Davis v. State*, 51 Neb. 301.)

It is suggested, if the demurrer had been sustained, no evidence in support of the first count of the information would have been adduced.   Doubtless this is true; but the admission of the testimony with respect to the warrant was equally competent to establish the charge contained in the count of the information under which the conviction was had, since the embezzlement of the moneys therein mentioned is predicated upon the fact that the accused paid said warrant out of the moneys belonging to the state.   The facts surrounding the issuance of this warrant, and the disposition thereof by the defendant, were admissible to show the guilty intent of the accused in the commission of the crime of embezzling the money which was used to pay the warrant, as will hereafter more fully appear.   (*Commonwealth v. Shepard*, 83 Mass. 575.)

It is strenuously insisted that the third count of the information,—the one upon which the accused was convicted,—is fatally defective, inasmuch as the county and state in which the embezzlement was committed are not mentioned in said count.   It is therein averred: "That the said Joseph S. Bartley, on the 2d day of January, A. D. 1897, in the county aforesaid, then and there being in said county," etc.   These words unquestionably referred to the county of Douglas named in the venue at the top of the information, and set forth in the first count thereof.   This is conceded by counsel for the accused, but they argue that such reference is not permissible, because the venue—"The State of Nebraska, County of Douglas, ss."—is no part of the information, and that, the prosecutor having entered a *nolle* as to the first count, such count cannot be considered for any purpose, but the information must be treated precisely the same as though the first count never had been inserted.

Whether the caption is or is not a part of an information, it is unnecessary to determine. The venue given at the top of this information, it is very evident, was made a part thereof by reference had thereto in the third count of the information. This doctrine was recognized and applied, with respect to a criminal complaint before a justice of the peace, in *Rema v. State*, 52 Neb. 379. (See *Rivers v. State*, 144 Ind. 16; *State v. Assmann*, 46 S. Car. 554.) Moreover, the third count of the information with sufficient particularity designates the county where the offense charged was committed, when read in connection with the first count of the information, where it is specifically alleged that the offense therein described was committed in the county of Douglas, in the state of Nebraska, no other county being referred to in the information. In the third count the averment is "In the county aforesaid, then and there being in said county." This clearly indicates that the embezzlement stated in said count was committed in the same county mentioned in the first count, to-wit, Douglas county, in this state. It was unnecessary that the venue should have been therein more distinctly laid. Where an information contains two or more counts, in the first of which the county and state are specifically stated, it is sufficient to allege in the other counts that the offense therein set forth was in the county aforesaid committed. (Criminal Code, sec. 412; *Fisk v. State*, 9 Neb. 62.)

The fact that the county attorney entered a *nolle prosequi* as to the first count is not important. That act did not have the effect to strike said count from the information or record. The entering of the *nolle*, after the commencement of the trial, was equivalent to an acquittal of the offense charged in the first count; but the count still remained a part of the information, and it was competent, if it could, to supply the deficiencies, or aid the allegations, in the other counts. (*Fisk v. State*, 9 Neb. 62; *Evans v. State*, 24 O. St. 208; *Commonwealth v. Clapp*, 82 Mass. 237; *State v. McAllister*, 26 Me. 374; *State v. Nelson*,

29 Me. 329.)    In *Wills v. State*, 8 Mo. 52, the indictment
contained two counts, on the first of which a *nolle prosequi*
was entered, and the time of committing the offense was
only shown by reference to that count. It was held
that said count was not stricken, and a conviction could
be properly had upon the second, although, without ref-
erence to the first, it was defective. To the same effect
are *Hutto v. State*, 7 Tex. App. 44; *Boles v. State*, 13 Tex.
App. 650.

Section 4, article 3, chapter 83, Compiled Statutes,
declares: "It shall be the duty of the auditor:
*  *  *  Seventh. To direct prosecutions in the name
of the state for all official delinquencies, in relation to
the assessment, collection, and payment of the revenue,
against all persons who by any means become possessed
of public money or property, due or belonging to the
state, and fail to pay over or deliver the same, and
against all debtors of the state." The proposition is ad-
vanced that this information is bad because it does not
allege that the prosecution was instituted under the di-
rection of the auditor of public accounts. To this we can-
not agree. The statute makes it the duty of a county
attorney to prosecute all criminal actions in his county,
as well as to file in the district court all informations
for crimes; and he may institute criminal proceedings
against a public officer who is guilty of some official de-
linquency relating to payment of the revenues, whether
directed by the auditor to do so or not. It will not do
to say that the county attorney cannot institute such a
prosecution until he has been so directed by the auditor.
The most that can be claimed for the provision of the
statutes already quoted is that it is the duty of the
county attorney to institute and prosecute a criminal ac-
tion against a public officer who has made default in the
assessment, collection, or payment of the public reve-
nues, and not that the county attorney is powerless to
take any steps towards instituting criminal prosecution
against a defaulting state treasurer until after the audi-

tor has given him instructions to act. The state was not required to prove that this prosecution was brought by direction of the auditor; hence, it was wholly unnecessary for the information to aver such fact.

The count under which the conviction was obtained is assailed on the ground that the particular acts constituting the embezzlement of the moneys of the state are not therein alleged. The offense is set forth in the information in the language of section 124 of the Criminal Code, which creates the crime of embezzlement by a public officer, and provides the punishment therefor. This was sufficient. It was not necessary for the prosecutor to set out the evidence relied upon to sustain a conviction, nor allege the particular act or acts in which the crime consisted. (*Whitman v. State*, 17 Neb. 224; *Hodgkins v. State*, 36 Neb. 160; *State v. Jamison*, 74 Ia. 602; *Claassen v. United States*, 142 U. S. 140; *Gibbs v. State*, 41 Tex. 491; *Bennett v. State*, 62 Ark. 516; *State v. Isensee*, 12 Wash. 254.) The three authorities cited by the defendant do not support a contrary doctrine, as a cursory examination will disclose.

*Hoyt v. State*, 50 Ga. 313, was a prosecution for embezzlement. The indictment charged the defendant with the fraudulent conversion to his own use of certain moneys of the state of Georgia without detailing the manner by which the embezzlement was committed, and the court in passing upon the sufficiency of the averments held that "an indictment charging a defendant with having received a certain amount of money to be applied for the use or benefit of the bailor, with an allegation that on a certain day the defendant fraudulently converted a specific portion thereof to his own use, is not demurrable on the ground of its being general, vague, and indefinite, and that it does not put the accused on notice of what he is called on to answer."

In *State v. Brandt*, 41 Ia. 593, the question involved was whether an indictment which charged the crime of em-

bezzlement in the language of the statute was sufficient. The court was equally divided in opinion.

In *State v. Parsons*, 54 Ia. 405, an indictment for embezzlement of public money was held bad, under the statutes of Iowa, because it omitted to charge that the defendant had failed to account for the money. The question we have been considering was not decided in that case.

*State v. King*, 81 Ia. 587, was a conviction of a county treasurer for the embezzlement of county funds. The indictment therein, in addition to charging that the defendant did "unlawfully and feloniously embezzle and convert to his own use, without authority of law," the money which he had received by virtue of his office, averred that he committed the crime by expending the money in his private business, and by permitting others to use and expend it in their private business transactions, and by using the money to pay the defendant's own private debts. It was urged that each of those acts constitutes a separate offense, and that the indictment was therefore bad for duplicity, as charging three distinct crimes. The supreme court held otherwise, saying: "We are of the opinion that the indictment is sufficient. The gist of the offense is the wrongful conversion of the public money, and it is wholly immaterial and mere surplusage to state whether the defendant used it in paying his debts, in purchasing property, had it on deposit in bank, carried it on his person, or loaned it to others, and the fact that three different modes of concealing the money are set forth in the indictment is wholly immaterial." We do not entertain the least doubt that the information in the case at bar is not defective, because the evidential facts constituting the crime are not alleged.

The objection that the information is bad, inasmuch as it does not aver that a demand had been made upon the accused for the money which came into his custody by virtue of his office of state treasurer, is without merit. It might be different if the information had been framed

upon the theory that the defendant was guilty of the crime of embezzlement by reason of his having failed to account and pay over the public moneys, which came into his hands, to his successor. This prosecution is conducted upon the specific charge that the defendant converted and embezzled to his own use during his official term certain of the moneys of the state; therefore no demand upon him for the money by his successor was necessary to be alleged, or proven upon the trial. We quite agree with the attorney general wherein he says: "If a demand were necessary, then a prosecution could not be maintained until demand was made, and compliance with the demand, within a reasonable time, would defeat the prosecution. On this theory the treasurer of the state could do with the money of the state what he pleased,—could invest it in mines, or on the board of trade,—and be guilty of no crime, provided he accounted for the money within a reasonable time after demand. The statute says otherwise; and there is no warrant either in the statutes or decisions for a theory so pernicious." The question under consideration was not passed upon in *Bolln v. State*, 51 Neb. 581. *State v. Munch*, 22 Minn. 67, cited by counsel for defendant, does not support their contention, but is in harmony with the conclusion we have reached. There were two indictments before the court in that case. In one, the defendant, as state treasurer, was charged with the embezzlement and conversion to his own use, of certain moneys belonging to the state of Minnesota, which he had received by virtue of his office. This indictment was sustained, although it contained no averment of a demand. The other indictment charged an embezzlement by reason of the failure of the defendant to pay the money over to his successor in office, and was held defective because it did not allege that a demand for the money had been made upon the defendant by the successor in office.

Another contention is that the trial court erred in not requiring the county attorney to elect, before entering

upon the trial, upon which of the several counts of the information he would rely for a conviction. In *Korth v. State*, 46 Neb. 631, it was ruled that where different felonies of the same general character or grade are charged in separate counts of an information it is within the discretion of the trial judge to require the state to elect among the several counts, and his ruling in that regard will not be molested, unless there has been an abuse of discretion. In the case at bar, as in the one to which reference has just been had, the county attorney made his election as to counts after the testimony for the state had been introduced. No abuse of discretion or prejudicial error is perceptible. The prosecutor elected to rely upon the six counts relating to the embezzlement of money, and, they having charged the same offense, he was not obliged to elect among them. (*Candy v. State*, 8 Neb. 482; *Furst v. State*, 31 Neb. 403; *Aiken v. State*, 41 Neb. 265; *Hill v. State*, 42 Neb. 503; *Hurlburt v. State*, 52 Neb. 428.

Alfred D. Cox, W. F. Church, Fred A. Tompkins, and George S. Mack were severally challenged by the defendant for cause, as being incompetent to serve as jurors, which challenges were overruled by the court, and the rulings are assigned for error. The question of the competency of the persons named to sit as jurors we are relieved of the necessity of considering, since the record fails to disclose that the accused exhausted all of his peremptory challenges. If he was not required to exhaust his peremptory challenges to exclude them from the panel, he was not prejudiced by the overruling of his challenge for cause. (*Bohanan v. State*, 15 Neb. 209; *Palmer v. People*, 4 Neb. 68; *Jenkins v. Mitchell*, 40 Neb. 664; *Blenkiron v. State*, 40 Neb. 11; *Brumbach v. German Nat. Bank of Beatrice*, 46 Neb. 540.)

Error is alleged in the overruling of the motion of the defendant, made at the close of the testimony advanced by the state, to direct a verdict of not guilty. For convenience this ruling will now be considered in connection

with the assignment that the proofs are insufficient to sustain the verdict.

There is no controversy as to the facts. During the two years immediately preceding the 6th day of January, 1897, the defendant was state treasurer, and exercised the duties of said office. The Omaha National Bank had been designated, under the laws of the state, for the depositing of the public funds, and the defendant kept on deposit in said bank, in pursuance of law, certain of the money which came into his hands by virtue of his office. The legislature at the session thereof held in 1895, for the purpose of making good to the state sinking fund the amount of loss it had sustained by reason of the failure of the Capital National Bank of the city of Lincoln, passed a law appropriating out of the state general fund the sum of $180,101.75, which appropriation is in the language following: "For state sinking fund, one hundred eighty thousand and one hundred and one and seventy-five one-hundredths ($180,101.75) dollars, to reimburse said fund for same amount tied up in Capital National Bank." (Session Laws 1895, ch. 88, p. 404.) Immediately upon the approval and taking effect of said appropriation, the defendant on the 10th day of April, 1895, made out in his own name, and presented to the auditor of public accounts, a voucher for the sum of money so appropriated for the replenishing of the state sinking fund, and caused the state auditor to issue on that date a warrant upon the state treasury for the payment of $180,101.75, which the defendant countersigned as state treasurer, the warrant being in words and figures following:

"$180,101.75. STATE OF NEBRASKA. No. 95,241.

"OFFICE OF THE AUDITOR OF PUBLIC ACCOUNTS,

"LINCOLN, NEBR., Apr. 10, 1895.

"Treasurer of Nebraska,

"Pay to J. S. Bartley ......, or order, one hundred eighty thousand one hundred one & 75-100 Dollars. For

to Reimburse State Sinking Fund.   In accordance with
legislative appropriation approved April 10th, 1895; and
charge General Fund.

"Countersigned:                  EUGENE MOORE,
    "J. S. BARTLEY,     *Auditor of Public Accounts.*
        "*State Treasurer.*      P. O. HEDLUND,
                                        "*Deputy.*"

This warrant was delivered to the defendant on the
day it bears date, and he at once registered the same in
the proper book in his office for payment, but omitted to
enter upon said book, in the proper column, the name
of the person presenting the warrant for payment.   Al-
most immediately thereafter the defendant indorsed his
name upon the back of said warrant, and placed the same
in the hands of the Omaha National Bank, or J. H. Mil-
lard, its president, for negotiation, and the latter, as
agent for the defendant, sold the same to the Chemical
National Bank of New York city for the face value.
Pursuant to the directions of the defendant, the Omaha
National Bank opened an individual account with him,
and entered therein a credit to defendant on the 26th day
of April, 1895, for the amount of the proceeds of said
warrant.   This money was subsequently drawn out of
the bank on the personal checks of the defendant.   In
November, 1896, the warrant was transmitted by the
Chemical National Bank to the Omaha National Bank
for collection.   It was called for payment in order of
registration, and on the 2d day of January, 1897, the de-
fendant went to the city of Omaha, and into the Omaha
National Bank, drew his check as state treasurer against
the depository account of the state in said bank for the
sum of $201,884.05, payable to the order of J. H. Millard,
Pt., and delivered said check to the bank in payment of
said auditor's warrant, which instrument he then and
there received, and at the same instant of time the ac-
count of the state was charged on the books of said bank
with the amount of said check, and the Chemical Na-
tional Bank was credited with a like sum.

The state relies for a conviction upon the redemption and payment of said auditor's warrant by the defendant out of the public funds of the state on deposit in the Omaha National Bank. The theory of the attorney general is that the warrant was void and therefore the state treasurer had no right or authority to redeem it. On the other side, it is insisted that the instrument was a valid and binding obligation of the state, which the law required the defendant to pay upon the receipt by him of sufficient funds for that purpose. In our view it is wholly immaterial whether the warrant in question was valid or void. If invalid, the defendant was not justified in paying it out of the money of the state under the circumstances disclosed by this record. It is argued, if it was not a valid instrument, it never has been paid. That the state is minus $201,884.05 by the transaction is an assured fact. Whether the state may or may not be able to recover the money from the Omaha National Bank, the Chemical National Bank, or any other corporation or person, is not material to the present inquiry. Doubtless, it is the duty of a state treasurer to pay, when he has available funds, a legal warrant drawn upon the treasury by the proper officer, to the person entitled thereto, and cannot be convicted of embezzlement for having done so. Had the defendant paid the warrant in question to the proper person, the case would present an entirely different aspect. The appropriation upon which the warrant was drawn was not made in favor of the defendant individually. The purpose of the legislature in passing the act was to transfer from the state general fund the sum appropriated to the state sinking fund, to reimburse the latter to the extent it had been depleted by the collapse of the Capital National Bank, and not to pay any debt it owed the defendant or to make a present to him of the said sum. The warrant did not belong to him, notwithstanding it was drawn payable to himself in his individual capacity, but he received it officially, in trust for the state, for and on behalf of the state sinking fund, as he

well knew. The title to the warrant never vested in him, and he could not transfer to another by indorsement that which he never possessed. He could not divest the title of the state in the warrant by the sale thereof to the Chemical National Bank, since he possessed no power to sell or negotiate the instrument. Nor was the bank an "innocent purchaser" within the meaning of that term as applied to commercial paper, inasmuch as the warrant disclosed on its face the purpose and object for which it was drawn, and the bank was bound to know at its peril that the defendant had no title to the instrument. Moreover, warrants issued upon the state treasury by the auditor of public accounts are not negotiable instruments, in the sense that the indorsee thereof may become a *bona fide* purchaser. (*School District v. Stough*, 4 Neb. 357; *Union P. R. Co. v. Buffalo County*, 9 Neb. 452; *Burlington & M. R. R. Co. v. Clay County*, 13 Neb. 370; *State v. Sabin*, 39 Neb. 570; *State v. Cook*, 43 Neb. 318.) The foregoing authorities hold that school district orders and county warrants are not negotiable instruments, and, upon principle, warrants drawn by the state auditor are within the same category. Therefore, it cannot be successfully asserted that the state was required to pay the warrant to the indorsee, as the latter was not an innocent holder. The defendant had actual knowledge of the facts surrounding the issuance and attempted transfer of the warrant. He knew that it was the property of the state, and that he was not legally or morally required to pay the money called for therein to any person other than himself. When the money was in the treasury to meet this warrant, his sole duty in the premises was to take the money out of the general fund and turn the same into the sinking fund,—credit one fund with the amount, and charge the other fund with a like sum. He knowingly disregarded his duty in the premises, paid the money to a party not entitled thereto, and defrauded the state to the extent of the sum so paid. This constituted an embezzlement of the public moneys. (*Bork v. People*, 1 N. Y. Cr. Rep. 368.)

We know judicially that the state, on April 1, 1891, issued 190 relief bonds, each of the denomination of $1,000, payable in five years; that the money belonging to the permanent school fund of the state was invested in those bonds; that the same were retained by the state treasurer for safe-keeping, and that six of them were actually redeemed, paid, and canceled by the defendant as state treasurer on October 31, 1896. Suppose these bonds had been stolen from the treasury, and subsequently paid by defendant to the holder thereof, or defendant had sold the bonds after their maturity to the Omaha National Bank, applied the proceeds to his own use, and subsequently redeemed the same by taking the money out of the state treasury and paying the face of the bonds and accrued interest to said bank; could there be a shadow of doubt that the defendant would have been guilty of the embezzlement of the money of the state, notwithstanding the bonds were legal and binding instruments? We think not. There is no difference between the supposed cases and the one at bar, providing the warrant in question was paid with the moneys of the state, which proposition will now receive attention.

As already stated, the accused was convicted of embezzling a certain sum of public money. Section 124 of the Criminal Code, under the provisions whereof this prosecution was instituted, expurgating all words that are not essential to the present inquiry, provides that "If any officer   *   *   *   shall convert to his own use   *   *   any portion of the public money, or any other funds, property, bonds, securities, assets, or effects of any kind, received, controlled, or held by him for safe-keeping, transfer, or disbursement,   *   *   *   every such act shall be deemed and held in law to be an embezzlement of so much of the said moneys or other property, as aforesaid, as shall thus be converted, used," etc. At the bar, as well as in the briefs of counsel, the proposition was argued with marked ability whether or not the word "money," as employed in said section is a generic or

specific term.  For the purposes of this case, we shall assume that the construction of the statute contended for by the defendant is the proper one, namely, that the term "money" was used by the legislature in a specific sense.  In other words, it means legal-tender coin, and also paper issued by the government, or by banks by lawful authority, and intended to pass and circulate as money.  It is insisted on behalf of the accused that, under the foregoing definition, he did not embezzle money—actual coin or currency—belonging to the state. It is true the state had no specific coins or currency in the possession of the Omaha National Bank, as it had made no special deposit of money in said bank.  The state, at the time of the delivery of the check in question to the bank, had on deposit therein, under the depository law, money in excess of the amount found by the jury to have been embezzled, which constituted the bank the debtor of the state to that amount.  (*State v. Bartley*, 39 Neb. 353; *In re State Treasurer's Settlement*, 51 Neb. 116.) It was conceded on the argument by counsel for the accused that if the latter had drawn from the depository bank the actual cash and then redeemed the warrant therewith, proof thereof would be sufficient to sustain the charge of embezzlement of money.  As we view it the legal effect of the transaction, as it actually occurred, is not materially different.  The defendant, as state treasurer, drew his check upon the Omaha National Bank for $201,884.05, payable to the order of the president thereof, and delivered the same to the payee, which, in connection with the acceptance of the check by the bank, the entry of the transaction upon the books thereof, and the surrender of the warrant to the defendant, constituted a segregation or separation of the amount of dollars expressed in the check from the general mass of money in the bank as the portion belonging to the state, and passed the title to the latter.  In contemplation of the parties, and in the eye of the law, the segregation was as full and complete as though Mr. Mil-

26

lard, the president of the bank, upon the delivery of the check to him had stepped into the vault, counted out $201,884.05, placed it upon the counter, charged the state with that amount on the bank books, credited the Chemical National Bank with a like sum, delivered the warrant to the defendant, and then returned the money to the vault from whence it came; or as if the check had been made payable to the defendant's own order, by himself presented to the paying teller at the bank for payment, who selected from the mass of money in the bank the sum represented by the check, placed the same in a pile on the counter, and then, by direction of the defendant, applied the same in payment of the warrant. To constitute embezzlement it was not necessary that the defendant himself should have acquired the physical or manual possession of the money. He, by his check, authorized and directed the bank to pay the money called for therein to "J. H. Millard, Pt." The bank was thereby empowered to select and transfer the money to the payee, which in contemplation of law it did, although there was no actual handling of a dollar in the entire transaction. In the language of Morse, Banks and Banking, sec. 451: "A credit given for the amount of a check by the bank upon which it is drawn is equivalent to, and will be treated as, a payment of the check. It is the same as if the money had been paid over the counter on the check, and then immediately paid back again to the acount or for the use for which the credit is given." (See *Oddie v. National City Bank of New York*, 45 N. Y. 735.)

*State v. Baumhager*, 28 Minn. 226, was a conviction of the crime of embezzling public moneys intrusted to the defendant as county treasurer. The only proof to sustain the charge was that the defendant had $5,000 of county funds in his hands; that he caused the county auditor to give him credit on the auditor's books for the amount of a county order which had been redeemed by the defendant's predecessor in office, although he had never returned it to the auditor or obtained credit there-

for.   There was no evidence of an actual conversion by
the defendant, nor that there was a shortage in his ac-
counts as county treasurer.   The proofs were held suf-
ficient to sustain the conviction.

*State v. Palmer*, 40 Kan. 474, was a prosecution for ob-
taining-moneys under false pretenses.   The evidence dis-
closed that one Critwell drew his check on a certain bank
in favor of the defendant for $75; that the latter pre-
sented the check, and the bank paid it out of moneys de-
posited by Critwell, and charged the same to his account.
This was held to be the obtaining of the money of the
prosecuting witness, although he had no specific money
on deposit in the bank.   It is true the defendant then
obtained physical possession of the money.   But sup-
pose, instead of receiving the actual cash, he had depos-
ited the check and received credit for the amount on the
books of the bank; proof of the commission of the offense
of obtaining money under false pretenses would have
been none the less complete, since the check was au-
thority to the bank to segregate the amount of the money
called for from the funds of the bank, and, when made,
such portion at the same instant became the specific
property of the prosecuting witness.   Likewise, the very
moment the money represented by the check drawn in
payment of the warrant in question was separated from
the general mass of money in the Omaha National Bank,
the title to the money thus segregated passed from the
bank to the state for an instant of time.

*Roberts v. People*, 9 Colo. 458, was a conviction for ob-
taining the moneys of Arapahoe county under false pre-
tenses.   The proofs showed that the defendant procured
a false claim against the county to be audited, and a war-
rant drawn on the treasury for the same, which was paid.
There was no evidence to show that the defendant pre-
sented the warrant for payment or received the money
thereon.   The court held this omission immaterial, say-
ing: "It was not necessary that defendant should himself
present it to the treasury in order to realize the money,

or in order that the county should be defrauded of its money by the acts of the defendant."

In *People v. McKinney*, 10 Mich. 54, the doctrine was announced and enforced that any act by a state treasurer, by which the money of the state should be abstracted from the treasury, or diverted from its proper use, with intent to apply it to his benefit, constitutes the crime of embezzlement. The contention was that the defendant was not present when the misappropriation took place. Christiancy, J., as the mouthpiece of the court, used this language: "The whole force of this objection, therefore, rests upon the assumption that the treasurer could perform no act by which the money could be thus abstracted or converted to his own use or benefit, unless at the time of the act he were personally present where the money happened to be. This assumption is so manifestly unfounded in law or fact, as to require no comment." (See in this connection *People v. Bringard*, 39 Mich. 22.)

*Bork v. People*, 16 Hun [N. Y.] 476, was a conviction of the defendant for embezzlement of $1,000 of the money of the city of Buffalo, in his hands as treasurer of said city. Smith, J., delivering the opinion of the court, observed: "The funds which the treasurer is alleged to have embezzled in the present case may have been a mere credit in a bank, and not money at all, and yet if he treated the credit as cash in his hands belonging to the city, proof that he embezzled it would support an indictment for embezzling money. The rule requiring certainty in an indictment is not to be so applied as to defeat the ends of public justice."

A case precisely in point is *State v. Krug*, 12 Wash. 288, which was a prosecution for the embezzlement of the moneys of the city of Seattle by the treasurer thereof. The evidence disclosed that the defendant, as such officer, drew a check for $10,000 in favor of one Fuhrman upon a bank having funds of the city on deposit in excess of said amount. The payee presented the check and received in payment thereof New York exchange. The

bank charged on its books the money to the city, and lessened its credit in said sum. The jury were instructed that the transaction constituted a payment of money, and that they should construe the check or instrument merely as the instrumentality by which the money of the city was transferred from the possession of the defendant. In reviewing the instruction, the supreme court in the opinion say: "Under these facts the appellant claims there was only an exchange of credits and no money was paid. The instruction of the court is based upon the theory that, in contemplation of law at least, this was money. It would be a travesty upon the administration of the law, if treasurers who are the custodians of the funds of the people should be allowed to escape the penalty of embezzlement by any such subterfuge as this theory would protect.  *  *  *  The practical result of the transaction in this case was that, when this check was given to Fuhrman, and was paid to Fuhrman by the New York exchange, and that amount charged to the account of the city, the city of Seattle had its account decreased to the amount of the check, and it was just as much a disposition of that $10,000 by the treasurer as though he had gone to the bank and got the money himself, and paid it to Fuhrman, or had loaned him that amount of money out of specie which he received, before it had been taken to the bank." Argument is unnecessary to show that the principle enunciated in that decision, if followed, controls the case at bar.

An examination of the authorities relied upon by counsel for defendant reveals that they do not support their contention. Without unduly extending this opinion, we can do no more than to make a brief reference to the leading cases cited by them.

In *Hamilton v. State*, 60 Ind. 193, it was held that proof of the larceny of national bank notes did not sustain the charge of the larceny of a certain sum "of lawful money of the United States." In *Tracy v. State*, 46 Neb. 361, this court held the contrary to be true.

In *Williams v. State*, 12 S. & M. [Miss.] 58, it was decided that a charge for betting money was not sustained by proof of the betting of United States treasury warrants. Of the same import are *Pryor v. Commonwealth*, 2 Dana [Ky.] 298; *Garner v. State*, 5 Yerg. [Tenn.] 158.

In *Carr v. State*, 16 So. Rep. [Ala.] 155, a banker was indicted for the embezzlement of a certain special deposit of money, and it was ruled that the averment was not sustained by proof of the embezzlement of a bank check.

*Thalheim v. State*, 20 So. Rep. [Fla.] 948, was a prosecution for the embezzlement of money. It was held that assets generally and property generally were not included in the term "money."

In *Banks v. State*, 28 Tex. 644, it was decided that proof of the theft of a mare would not sustain an indictment for larceny of a "horse," since the statute of Texas did not employ the word "horse" in a generic sense. Of like purport are *Turley v. State*, 22 Tenn. 323; *Jordt v. State*, 31 Tex. 571.

In *Commonwealth v. Howe*, 132 Mass. 250, the indictment was for obtaining a certain sum of money by false pretenses, which charge, it was ruled, was not sustained by proof of obtaining a certificate of deposit of a bank. Had the certificate been presented to the bank and paid, the case might have some bearing upon the question here.

*Lindsay v. State*, 19 Ala. 560, is to the point that an indictment for selling whiskey is not supported by proof of the sale of any other kind of liquor.

*Lewis v. State*, 28 Tex. App. 140, was a prosecution for the misappropriation of public money. It was held that the term "money" within the meaning of the Criminal Code, is "legal-tender metallic coins, or legal-tender currency of the United States." In the preceding discussion we have assumed that to be the rule in this state.

Both upon reason and authority we are constrained to hold that the charge of embezzlement of money contained in the third count of the information herein is sustained by the evidence adduced, and that it was not error to decline to direct a verdict of not guilty.

It is insisted that there was error in the admission of evidence of certain letters between the president of the Omaha National Bank and the president of the Chemical National Bank of New York. The earliest portion of this correspondence was a letter from the president of the Omaha National Bank inclosing the auditor's warrant in question, offering to accept therefor its proceeds on the basis of a rate of interest at 6 per cent, if a greater rate would not be allowed. The answer to this letter was dated April 23, 1895. It advised the president of the Omaha National Bank of a credit of said bank with the Chemical National Bank of the sum of $180,550.77, as the proceeds of t¹ ʰ sale of said warrant, pursuant to the offer contained in the letter of Mr. Millard. Mr. Balch, the assistant cashier of the Omaha National Bank, testified that he saw the defendant at that bank about 5 o'clock in the evening of the same day, or of the one immediately preceding that, on which he saw the letter first above referred to, and that between the day the warrant was sent to New York and the time the advice of the credit was received witness had a conversation with defendant, in which the former asked the latter what disposition should be made of the proceeds of the warrant when the Omaha National Bank got returns on it, and that defendant replied to open an account and pass it to his own individual credit. The witness further testified that, when the credit was given for the proceeds of the warrant by the Chemical National Bank, he carried out the instructions of defendant and placed the said proceeds to the personal credit of the latter on the books of the Omaha National Bank. A copy of his personal account was introduced in evidence, which showed the credit was given as above indicated. It is unnecessary to go further into details to show that there was sufficient evidence to justify the conclusion that in disposing of the warrant Mr. Millard, the president of the Omaha National Bank, and the bank itself, were the agents of defendant. The evidence above and herein-

after detailed are portions of the proofs which established a common purpose between the defendant and his agency in Omaha, which was the sale of the warrant to the Chemical National Bank. Whatever correspondence was necessary and proper for the consummation of this common design was admissible against the defendant, the party at whose instance we must assume, from the evidence, this correspondence was carried on. (*Brown v. Horr*, 21 Neb. 113.) This principle we think none the less applicable because the transaction entered into with a common purpose was not the ultimate fact sought to be established, but was relied upon to show the motive with which a subsequent act growing out of and intimately connected with it, was done.

It is strenuously insisted that the county attorney unnecessarily made public, in the presence of members of the regular panel of jurors in open court, the alleged fact that there had been an attempt to bribe jurors to find in favor of the accused, and that from this prejudice must have been sustained by the defendant. From the affidavits submitted by defendant it might be concluded that the county attorney did make the statement attributed to him. On the other side, there were affidavits which corroborated the affidavit of Mr. Baldrige, the county attorney, to the effect that his statement in open court was as follows: "I have been informed by a juror on the regular panel that he has been approached by some outside party with a view to influencing his verdict in a case for trial in this court. I deem it my duty to bring this matter to the attention of the court in order that the court may make whatever order it deems necessary or proper in the premises, and that such punishment may be meted out to the guilty party as the court thinks warranted." As to whether there was the alleged misconduct of the county attorney, or whether his conduct was as proper as above indicated, was a question of fact, which, upon conflicting evidence, was settled adversely to the accused. Under such circumstances the ruling

of the trial court will not be disturbed.  (*Lindsay v. State,* 46 Neb. 177; *Grossman v. State,* 46 Neb. 21; *McMahon v. State,* 46 Neb. 166; *Carleton v. State,* 43 Neb. 373.)

The trial court upon consideration of conflicting evidence concluded that there had been no misconduct on the part of alleged detectives in shadowing or in attempting to communicate with or influence jurors while in charge of a bailiff of the court, and the principle just invoked must likewise preclude a consideration of the question of fact.

In respect to rulings of the court in denying the demand of the defendant that one of the detectives should be compelled to submit to an oral examination in open court touching the matters of fact just considered, and the denial of the demand that the county attorney should answer orally with reference to alleged interviews concerning the conduct of the trial and other like matters, in some of which it was claimed the presiding judge had taken part, it is not deemed necessary to indulge in an extended discussion, for rulings of a like nature have been sustained by this court in *Kountze v. Scott,* 52 Neb. 460, and in *Hamer v. McKinley-Lanning Loan & Trust Co.,* 52 Neb. 705.

In the progress of the examination of Mr. Millard, the president of the Omaha National Bank, he was interrogated with reference to the check drawn by Bartley on said bank for the amount which by the information he was charged with embezzling. In this connection the testimony and conduct complained of, omitting objections and the rulings thereon, were as follows:

"Q. You may state, Mr. Millard, how long that check was in your possession at that time?

"A. I don't think it was ever in my possession,—personal possession.

"Q. How long was it in the bank?

"A. I think it was there two days.

"Q. Do you know what became of it afterwards?

"A. It was returned to Mr. Bartley.

"Q. And that was how long ago?

"A. I would think about two months, or possibly three months ago—perhaps two and a half months ago.

"Q. Did Mr. Bartley come for it at that time to the bank?

"A. No, sir.

"Q. Have you seen the check since?

"A. No, sir.

"Mr. Baldrige: I want to make in open court a formal demand upon the defendant and his attorneys to produce——

"Mr. Whedon: I object to any proceedings of this kind in the presence of the jury. There is no law for it and it is unprofessional.

"Mr. Baldrige: The state in this case——

"Mr. Whedon: I object to any demand being made in the presence of this jury during the trial.

"By the court: The jury may retire to my room in charge of the bailiff. [Jury retired.]"

It is unnecessary to describe what transpired during the absence of the jury from the court room, and we shall, therefore, transcribe from the bill of exceptions the description of the proceedings, in the presence of the jury as we assume, when Mr. Millard, again having been called to the witness stand, was testifying with reference to this check. This part of the record is as follows:

"Mr. Baldrige: I want to say that the state proposes to offer in evidence a notice given by the state of Nebraska to the defense to produce the check about which the witness is interrogated.

"Mr. Whedon: I move to strike out of the testimony and out of the record the statement of counsel, following the ruling of the court on the objection made by counsel, and except to the statement that has been made as improper and irrelevant.

"By the court: The objection overruled and the motion to strike out overruled.

"Mr. Mahoney: The defendant excepts.

"By the court: Before the witness answers I want to ask counsel for the state if they have the check in their possession.

"Mr. Baldrige: No, sir; we have not.

"Mr. Whedon: The defendant objects to this testimony and questions of the court and to the giving of testimony by Mr. Baldrige, on the ground that the counsel for the state's names are not upon or indorsed on the information as witnesses, and they are not competent to testify in the case, and move the court to strike out the testimony, for the reason counsel is not sworn to give the testimony.

"By the court: Objection overruled. It is not a matter of evidence. It is a question for the court's benefit. The jury will not consider any statement between counsel and the court in any manner in forming their verdict.

"Mr. Mahoney: The defendant excepts."

In a later stage of the trial the notice to produce the aforesaid check was offered in evidence in the presence of the jury, and an objection thereto was sustained, whereupon Mr. Baldrige said: "The offer was made generally and more particularly for the purpose of advising the court of the fact that due notice had been served upon the defense requesting them to deliver over to the state for their use in the trial the checks and papers set out in the paper marked 'Exhibit 12.'

"Mr. Mahoney: Defendant objects to putting into the record any offer of an offer and objects to incorporating into the record the statement of counsel of the purpose of the offer, the offer being of a written instrument and defendant moves to strike out what the county attorney has placed in the record.

"The court: The objection to the offer is sustained. The document may be retained as a paper of the files and may be filed in the case, but not received as a matter of evidence. The motion to strike out is overruled. Defendant excepts."

This portion of the record has been copied for the rea-

son that, perhaps, an attempt to describe it in a narrative form might work an injustice, for we confess our inability to imagine in what respect the accused could have been prejudiced by what was said or done. It is disclosed by the bill of exceptions that secondary evidence descriptive of the check in question was offered, and it seems to us that in the preliminary steps leading thereto there was no misconduct on the part of counsel for the state or of the presiding judge. Whatever unfavorable inference to the accused could have been drawn by the jury from the transaction before them was corrected by the admonition that the jury were not to consider any statements between counsel and the court in any manner in forming their verdict. (*Thalheim v. State*, 20 So. Rep. [Fla.] 945; *Hoover v. State*, 48 Neb. 184.)

There were monthly statements made by the treasurer during defendant's term to the auditor of public accounts offered in evidence, with respect to one of these, defendant's deputy was asked what, if any, means Bartley would have for knowing the correctness of the report as to its details. To this question Mr. Baldrige objected and remarked: "Mr. Bartley might know everything that was in that report; he is the treasurer and is presumed to know it. If he does not he himself should say so." To this last remark Mr. Mahoney objected and excepted as improper, whereupon the court said: "It is improper and that language should not be indulged in in any manner or form as to what the defendant ought to say." It may be conceded that the remark was improper and yet this was just how it was characterized by the court in its remark to the jury, and we cannot assume that this suggestion was ignored. It would unnecessarily prolong this opinion to attempt to describe the several instances wherein it is insisted that the court improperly propounded questions to witnesses under examination. It must suffice to say that each of these alleged infractions of propriety has been carefully considered, and that we have found nothing which justifies an inference that

from the course criticised in this respect any prejudice could have resulted to the accused.

It is urged that there was error in the admission in evidence of the official bond of defendant, for the reason the instrument in question, to render it valid, should have been approved on or before January 3, 1895, whereas in fact there was no approval till six days beyond said statutory limit. In support of this contention there is cited the case of *State v. Lansing*, 46 Neb. 514. In the case cited the contention was between parties each of whom claimed that he was county judge of Lancaster county. Lansing, the incumbent, was in possession, and it was asserted in the information, wrongfully so, for the reason that the mandatory requirement of the statute with reference to the approval of his bond had not been complied with. The statutory provision relied upon to sustain this contention was section 15, chapter 10, Compiled Statutes, which is in this language: "If any person elected or appointed to any office shall neglect to have his official bond executed and approved as provided by law, and filed for record within the time limited by this act, his office shall thereupon *ipso facto* become vacant, and such vacancy shall thereupon immediately be filled by election or appointment as the law may direct in other cases of vacancy in the same office."

At the general election following that at which Lansing had been elected to the office of county judge for which he had failed to qualify, it was assumed that the office was vacant and the relator was accordingly nominated to fill this vacancy and received the highest number of votes cast for that office. The action in which the opinion of this court in *State v. Lansing, supra*, was filed was therefore one in which the title to the office was the subject-matter in dispute. Whether there was a vacancy by reason of Lansing's failure to qualify was the pivotal question, and it was held that this failure was a fatal defect in his title. In the case at bar no one ever questioned the right of the defendant to hold the office

of state treasurer for the term for which he was elected. That term, with all its honors and emoluments he has enjoyed, and after its expiration there is for the first time raised a question whether his incumbency was rightful, which question is raised by himself when charged with malfeasance in the performance of its duties. That the opinion of this court in *State v. Lansing, supra,* has no tendency to support this contention of the defendant requires no elaboration to render perfectly clear. Whether defendant was an officer *de jure* or *de facto,* he was required to perform the duties which the law imposed upon him with integrity and loyalty to the state, and his failure in this respect should subject him to punishment regardless of his technical right to be inducted into office. (*State v. Goss,* 69 Me. 22; *State v. Mims,* 26 Minn. 183; *People v. Cobler,* 108 Cal. 538; *State v. Findley,* 101 Mo. 217.)

It was urged that there were material variances between the auditor's warrant which, it was charged, had been embezzled, and that which was offered in evidence. These alleged variances were that the warrant offered in evidence had certain figures in the upper left hand corner, and on its face the words: "Paid Jan. 2, 1897. State of Nebraska. Treasurer's office," and on the back the words: "Presented and not paid for want of funds and registered for payment Apr. 10, 1895. Number 27932. J. S. Bartley, State Treasurer, Lincoln, Nebraska." As to the counts whereby was charged the embezzlement of the warrant a *nolle* was entered, so that these alleged variances became immaterial. The figures consisted of two amounts which added together made up the amount with the embezzlement of which Mr. Bartley was charged. The other alleged variances were placed upon the warrant by defendant, in one instance at least, and if not by himself the other was stamped upon the face of the warrant by one of the employés in his office. In neither case was there what would amount to a spoliation and the warrant therefore was competent evidence

of the facts in proof of which it could be considered by the jury, and these have already been sufficiently noted.

On several of the exhibits offered in evidence there were stamped the words: "Otto Helbig, accountant. Examined. 501 Tacoma Bldg., Chicago." These were explained by Mr. Helbig to have been placed upon the several exhibits to show that in making up his statement of the condition of the office of state treasurer he had used the information conveyed by such exhibits. The exhibits themselves contained statements made by defendant as treasurer and only these were submitted to the jury. The words stamped by Mr. Helbig were not given in evidence, consequently they could not have operated to the prejudice of the accused.

For the defense, Mr. Bartlett, the deputy treasurer, testified on his direct examination that the keeping of the books in the treasurer's office was under his supervision and that the manner in which the sinking fund account was carried was in pursuance of the direction of defendant. On cross-examination Mr. Bartlett testified as follows:

Q. The check referred to was the check in payment of the warrant, was it not?

A. Yes, sir.

Q. But my question is as to the proceeds of the warrant when it was sold.

A. I never knew it was sold.   *   *   *

Q. When did you first know that the warrant was sold?

A. Not until I wrote the stub for the payment of the warrant.

It is complained that the question and answer last quoted were not in the line of cross-examination. We think otherwise. The item referred to was one which under certain conditions, according to the evidence of Mr. Bartlett, would have been entered in the sinking fund account. It did not there appear, and it was proper to ask Mr. Bartlett why the account showed no pro-

ceeds of the sale of the warrant and in this connection when he first learned of the fact of the sale. His answer was that he learned of this sale on or about the date of the check, which was January 2, 1897, and this certainly was a circumstance proper to be considered by the jury in connection with his direct examination which showed that his entries were in accordance with the directions of defendant.

It is insisted there was error in permitting E. E. Balch, assistant cashier of the Omaha National Bank, on cross-examination, to answer that prior to the date of the check designated as "Exhibit 49" all the money realized from the sale of the warrant in New York had been drawn out of the Omaha National Bank by defendant. This check bore the date of June 4, 1896. Of the same date was a deposit slip showing a deposit by defendant of his individual check to the credit of himself as treasurer in the sum of $50,000. As this check corresponded with that designated as "Exhibit 49" it was not an abuse of discretion for the court to permit the cross-examination of the witness to anticipate a possible argument founded on the above noted coincidences by his testimony that the proceeds of the sale of the warrant, previous to June 4, 1896, had been withdrawn from the bank by defendant. In this connection it is proper to remark there was no abuse of discretion in admitting in evidence, for the purposes first indicated, the portion of the general fund account of Mr. Bartley with the Omaha National Bank of date about June 4, 1896, and certain exhibits connected with the same subject-matter. (*People v. McKinney*, 10 Mich. 54.)

Exhibit 35 was a statement showing the receipts and disbursements of the state treasury in June, 1896, filed in the department of the auditor of public accounts of the state of Nebraska. This statement was signed "J. S. Bartley, State Treasurer." It was urged that there was error in refusing to permit the deputy treasurer to testify whether or not this statement was prepared by the sub-

ordinate force in the treasurer's office.    It is not claimed
that any of these items in fact was incorrect, and there-
fore there was no admission by which the defendant
would not be bound as well when written by a clerk as
when written by himself.    If there had been any claim
of mistake or oversight this might be different.    But
even then, when it had been shown that the statement
had been signed by defendant, it devolved on him to rebut
the presumption that the statement was correct.

We cannot understand what proper purpose could have
been subserved if the defendant had been permitted to
prove the usual media by which remittances were made
to the state treasurer by county treasurers.    It seems
to be intimated in argument, as we understand it, that
if it had been permitted to be shown that these were
usually in drafts, checks, etc., that this fact might have
justified the deposit in banks other than depositories.
The statute on this subject prescribes where deposits
must be made and must govern, and no excuse can dis-
pense with its provisions.

Mr. Helbig, an expert accountant, on rebuttal, was per-
mitted to testify that he had made an examination of the
books of the treasurer's office, and that from the exam-
ination he had ascertained the amount of the general
fund on hand at different times, as well as the several
amounts of expenditures and disbursements therefrom,
together with other items as to various other accounts
disclosed by said books.    He further testified that all
the said books, together with the memoranda he had
consulted in connection with them, were present in the
court room at the time his testimony was given.    There-
upon the court permitted the witness to testify with ref-
erence to the conditions above indicated, and this, it is
insisted, was prejudicial error.    In his discussion of ex-
ceptions to the rule requiring the production of the best
evidence, Prof. Greenleaf said: "A further relaxation
of the rule has been admitted, where the evidence is the
result of voluminous facts or of the inspection of many

books and papers, the examination of which could not conveniently take place in court." (1 Greenleaf, Evidence sec. 93.) This exception has been recognized in *Masonic Mutual Benefit Society v. Lackland*, 97 Mo. 137, and in *State v. Findley*, 101 Mo. 217, and by the supreme court of Oregon in *State v. Reinhart*, 38 Pac. Rep. 822. In *Hollingsworth v. State*, 111 Ind. 289, it was held that in a prosecution for embezzlement, or other crime, where the books, records, papers, and entries are voluminous and of such a character as to render it difficult for the jury to arrive at a correct conclusion as to amounts, expert accountants may be allowed to examine such books, etc., and testify to the result. No adjudicated case in opposition to this exception to the general rule requiring the production of the best evidence has been cited, and we are satisfied that where, as in this instance, the sources from which the expert accountant derived his knowledge were present in the court room subject to inspection he was properly permitted to testify as he did with reference to what was shown by such books and documents.

In the act entitled "An act to provide for the depositing of state and county funds in banks" (Session Laws 1891, p. 347) it was provided that the depository bond should be, in substance, of the form set out in said act. This form closed with the words: "Sealed with our seals and dated the —— day of ——, A. D. ——." There was no seal opposite the signatures to the depository bond which was given by the Omaha National Bank, from which consideration it is urged that the bond was invalid, and therefore the bank was not legally a depository. In this case this failure to attach seals is unavailable to defendant, for whether the seals are essential and whether from the want of them the bank was not entitled to receive state deposits are immaterial matters. If defendant entertained doubts as to whether the bank was in fact a depository he might have been justified in satisfying himself upon that point before making deposits, but he cannot now be heard to stultify himself

by asserting when the matter becomes a collateral issue
that he deposited the money of the state during his term
of office in a bank wherein by law he was forbidden to
make such deposits.

We pass to the consideration of the instructions given
and refused.   It is insisted the trial court erred in its
third paragraph of the charge in saying to the jury that
the information charged the defendant with the embez
zlement of certain public money in the county of Doug-
las.   This contention is predicated upon the fact that
the counts relating to the misappropriation of the money
contain no specific statement that the crime was com-
mitted in Douglas county.   The place of the offense, as
shown elsewhere in this opinion, was sufficiently averred
by proper and suitable reference to the first count of the
information and the venue, in each of which the county
of Douglas is set forth, and that such reference was per-
missible even though a *nolle* to the first count of the in-
formation had been entered.   This is a sufficient answer
to the foregoing criticism made upon the instructions.

Objection is made to the eighth instruction, which
reads: "The state having entered a *nolle* of the first and
second counts of the information you will not consider
the testimony relative to the warrant, known as 'Exhibit
4,' or any transaction concerning the same, except only
and for the purpose of showing the criminal intent of
the defendant of and concerning the charge of the em-
bezzlement of the $201,884.05."   No error prejudicial to
the accused is perceptible in the foregoing language of
the court.   It contained no assumption that the defend-
ant acted with a criminal intent, but advised the jury,
and properly so, that they might consider the evidence
of and concerning the warrant for the purpose of ascer-
taining whether the defendant was actuated by a guilty
intent or motive in appropriating the money alleged to
have been embezzled.   The evidence tended to show
that the negotiation of the warrant and the subsequent
payment thereof were parts of the same common design

and purpose, parts of the same transaction, although not transpiring at the same time, and when construed together make manifest the purpose of the defendant to misappropriate to his own use the money of the state. (*People v. Cobler*, 108 Cal. 538.)

The eleventh instruction reads thus: "If you find from the evidence that the Omaha National Bank executed a bond to the state of Nebraska, asking to be designated as a state depository of public money of the state, and that such bond was approved by the governor, secretary of state, and attorney general, then you should find the Omaha National Bank was a state depository of the current funds of the state." It is argued that this instruction is faulty because the jury were not advised as to the form of the bond necessary to be given by the Omaha National Bank to constitute it a state depository. If the defendant desired the jury instructed on that point he should have tendered one to the trial judge. Mere non-direction of the court is no ground for reversal. (*Hill v. State*, 42 Neb. 503; *Housh v. State*, 43 Neb. 163; *Pjarrou v. State*, 47 Neb. 294.)

By the twelfth instruction the jury were told that: "The term 'conversion of money' means an unauthorized assumption and exercise of the right of ownership over the moneys belonging to another, and the alteration of its condition to the exclusion of the owner's right; and such conversion must be with the intention to use or dispose of the said moneys for the benefit of the person converting it, or to the benefit of some other person or corporation than the owner thereof; and it would be a conversion in law even though the party intended at the time of the appropriation at some future time to repay the money so appropriated." The only criticism upon the language is the use of the words "appropriation" and "appropriated." The prefix "mis" should have preceded each of those words in order to have made the expression technically accurate. We are, however, satisfied that the omission thereof was not prejudicial to

the accused, since the instruction as a whole when read in connection with the remainder of the charge made plain to the jury that there could be no conviction unless there was a misappropriation of the public money,—in other words, that the appropriation must have been wrongful. It is a rule of universal application that instructions must be considered together, and if then they correctly announce the rule, they will be upheld. (*Davis v. State*, 51 Neb. 301; *Ford v. State*, 46 Neb. 390; *Carleton v. State*, 43 Neb. 373.)

The thirteenth instruction requires no discussion, since it raises the question whether to prove the offense charged it was necessary that specie should have been received on the check given in payment of the auditor's warrant. The instruction is in harmony with the views expressed in another part of this opinion upon the motion to direct a verdict and the sufficiency of the evidence to sustain the conviction. Further elaboration of the point would be superfluous.

It is urged that the court erred in assuming in the tenth, eleventh, and fifteenth paragraphs of the charge the validity of the depository law. An elaborate argument is made in the briefs against the validity of that piece of legislation on grounds other than those heretofore considered by this court. We must be excused from entering upon a discussion of the subject at this time, as the defendant is in no position now to assert that the public moneys of the state were not rightfully on deposit in the Omaha National Bank. He recognized the validity of the statute by placing the moneys of the state in said bank, and it would indeed be a reproach upon the law to permit him to assail the depository law in a prosecution for the embezzlement of the public funds so deposited by him. It was the money of the state that went into the bank, and it was likewise the money of the state that paid the check, whether the bank was a lawful state depository or not.

Complaint is made of the fourteenth instruction. It,

in effect, told the jury that if the defendant disposed of
the warrant in question, or caused it to be done, or se-
cured credit for the same, in his individual capacity and
for his own use, or for the use of any other person except
the state, and if, as state treasurer, he paid the warrant
with state funds, that would constitute embezzlement of
the money with which the warrant was paid. The argu-
ment is that the warrant was valid, and it was the duty.
of the defendant to pay it in the order of registration.
The position is unsound as we have already demon-
strated, at least to our own satisfaction. It is further
said this instruction authorized the jury to find the de-
fendant guilty of embezzling the warrant, although the
counts charging the misappropriation of that instrument
had been *nolled*. There is no merit in this contention.
If certain facts were established, it permitted a convic-
tion for the conversion of the money alone.

The fifteenth instruction is in this language: "If you
find from the evidence that the Omaha National Bank
was a state depository, and if you further find the de-
fendant drew a check upon said bank against the funds
of the state therein deposited to the credit of the state,
and that said check was paid at said bank, that would
constitute a taking of public money of the state by the
defendant at the bank, whether the defendant was pres-
ent at the time of payment of the check or not; nor
would it be material whether the check was drawn in;
favor of the defendant or not, or by whom presented."
It is suggested by counsel that under this instruction it
would be a conversion by defendant, had a check drawn
by him in his official capacity on said bank, but not de-
livered, been stolen from the defendant, the name of the
payee forged thereon, and then presented to and paid by
the bank. If there were any evidence tending to show
any such state of facts there might be some foundation
for the criticism directed against the instruction. But
no such testimony was admitted on the trial, while it
was established beyond dispute that the defendant in

person presented the check to the bank for payment. The instruction, therefore, could not have misled the jury by reason of the matter suggested, nor because it stated that it was immaterial whether defendant was present or not when the check was paid. Moreover, we do not think it was necessary for the defendant to have been in Douglas county when the check was presented and paid to make the offense complete in that county. Had he sent the check by mail or messenger to take up the warrant, still the misappropriation of the funds would have taken place in that county on the payment of the check there. (*People v. McKinney*, 10 Mich. 54; *Norris v. State*, 25 O. St. 217; *Commonwealth v. Taylor*, 105 Mass. 172; *Commonwealth v. Wood*, 142 Mass. 459; *Commonwealth v. Karpowski*, 167 Pa. St. 225.)

The sixteenth instruction is not incoherent, but is logical and easily understood. The seventeenth instruction related to the testimony of expert accountants, the substance thereof being that the testimony of such witnesses should be given such weight as the jury considered them entitled to. This was not giving undue prominence to the testimony of that class of witnesses.

The twenty-first instruction is criticised, which reads as follows: "'A reasonable doubt,' as used in these instructions, to justify an acquittal, must be a reasonable one arising from a candid and impartial investigation of all the evidence in the case. A doubt produced by an undue sensibility in the mind of any juror in view of the consequences of his verdict is not a reasonable doubt, and the juror is not allowed to create sources of materials of doubt by resorting to trivial or fanciful suppositions and remote conjectures as to a possible state of facts differing from those established by the evidence. You are not at liberty to disbelieve as jurors if from all the evidence you believe as men. Your oath imposes on you no obligation to doubt where no doubt would exist if no oath had been administered. If after a careful and impartial examination and consideration of all the evidence

in the case you can say that you feel an abiding conviction of the guilt of the defendant and are fully satisfied to a moral certainty of the truth of the charge made against him, then you are satisfied beyond a reasonable doubt." Two objections are urged against the above instruction, first, that the opening sentence incorrectly states the law. True, the accused had the right to the benefit of any doubt arising from the want of evidence in the case. This was not taken from him in the instruction quoted. The court did not say that a reasonable doubt, to authorize an acquittal, must be one arising from the evidence alone, but merely told the jury that to produce an acquittal it must be a reasonable doubt arising from a candid and impartial investigation of all the evidence in the case. If the jury did that, it would reveal to them any lack of evidence to sustain a conviction, and if any such want of evidence was found there could be no conviction. The other criticism is upon the language: "You are not at liberty to disbelieve as jurors if from all the evidence you believe as men. Your oath imposes on you no obligation to doubt where no doubt would exist if no oath had been administered." An expression almost in the foregoing language was approved in the celebrated case of *Spies v. People*, 122 Ill. 1, and *Nevling v. Commonwealth*, 98 Pa. St. 322, and by this court in at least two cases, *Willis v. State*, 43 Neb. 102, and *Davis v. State*, 51 Neb. 301. With those decisions we are content. A discussion of the subject anew would be profitless.

The court declined to give the second instruction requested by the accused, which is as follows: "You are instructed that the law presumes the defendant innocent in this case and not guilty as charged in the information. This presumption of innocence is not a mere form, which may be disregarded by the jury at pleasure, but it is an essential, substantial part of the law of the land binding on you as jurors in this case. You are to regard this presumption of innocence in this case as a matter of evidence in favor of the defendant, to the benefit of which

he is entitled during your entire deliberations." The request is in accord with the holding in *Long v. State,* 23 Neb. 33, where it was stated, following *Garrison v. People,* 6 Neb. 285, that the legal presumption of innocence was a matter of evidence to the benefit of which the accused was entitled. The same principle embraced in this request was laid down in the sixth instruction given in the case at bar by the court on its own motion, which reads thus: "The law raises no presumption against the defendant; on the contrary, the presumption of law is in favor of his innocence. This presumption of innocence continues through the trial until every material allegation in the information is established by the evidence to the exclusion of all reasonable doubt." (*Garrison v. People, supra.*) The instruction in that case to which the defendant took exception read: "And if after you shall have carefully examined the evidence in this case, you shall be able to reconcile it with the innocence of the prisoner, it will be your duty, as no doubt it will be your pleasure, to acquit him." This court held that the language quoted fully recognized the rule that the legal presumption of innocence is a matter of evidence. The twenty-first instruction in the case at hand is no less favorable to the accused than the one requested by him; hence he was not injuriously affected by the refusal to give the instruction tendered.

Defendant's tenth instruction was framed upon the theory that to constitute embezzlement the accused must have obtained the actual physical possession of the money misappropriated. The fallacy of this proposition has already been shown.

The fourteenth and fifteenth instructions refused were to the effect that the auditor's warrant introduced in evidence was a valid instrument and that the defendant could not be convicted of the crime of embezzlement of the money used in payment of such warrant. This doctrine being opposed to the views we have expressed upon another question in the case, the requests were properly refused by the trial court.

It was not error to refuse the other requests of the defendant to charge, since, in so far as they stated the law correctly, they were fully covered by the instructions given. This rule that it is not error to refuse to repeat instructions has been so frequently stated by this court as to make unnecessary the citation of the authority to sustain the proposition.

It is finally insisted that the jury did not ascertain and state in their verdict the value of the money embezzled, and, therefore, the finding was insufficient upon which to base the judgment and sentence. . Section 488 of the Code of Criminal Procedure declares: "When the indictment charges an offense against the property of another by larceny, embezzlement, or obtaining under false pretenses, the jury, on conviction, shall ascertain and declare in their verdict the value of the property stolen, embezzled, or falsely. obtained." The foregoing provision makes it mandatory upon the jury, in case of conviction of either of the offenses named in the section, that they fix and return in their verdict the value of the property stolen, embezzled, or falsely obtained. (*McCoy v. State*, 22 Neb. 418; *McCormick v. State*, 42 Neb. 866; *Fisher v. State*, 52 Neb. 531.) The jury in the case at bar, after finding the defendant guilty as charged in the third count of the information, did ascertain and declare "the amount embezzled to be $15188.445," which was a substantial compliance with the requirements of the statute. The meaning of the verdict returned cannot be misunderstood. The accused was convicted upon the charge of embezzling a specified sum of money, and the finding by the jury of the amount embezzled is equivalent to an ascertainment of its value. The words "amount" and "value" when applied to money are synonymous terms. Therefore, when the jury determined the amount of money embezzled, they also ascertained its value.

In *Grant v. State*, 55 Ala. 201, it was ruled that in a prosecution for the embezzlement of money no averment or proof as to the value thereof is necessary, since the

court will take judicial notice that the same is worth its face value. To the same effect are *Duvall v. State*, 63 Ala. 12; *Gady v. State*, 83 Ala. 51; *State v. Barr*, 38 Atl. Rep. [N. J.] 817.

In *Hildreth v. People*, 32 Ill. 36, the defendant was prosecuted for larceny of $1,270 in current bank bills. The jury returned the following verdict: "We, the jury, find the defendant guilty of larceny, of twelve hundred and seventy dollars, as charged in the indictment." It was there argued, as here, that the verdict was defective, because the value of the money was not ascertained by the jury. The court, in the opinion, say: "It is true the verdict does not, in terms, find the value of the money stolen. But it finds that he was guilty of stealing a certain number of dollars, and as dollars indicate a fixed and precise value, the verdict is as certain in that respect as if they had found the worth of the money. The indictment charges that the defendant stole so many dollars in bank bills, and the jury find that he was guilty of the larceny of that number of dollars. This was, although not strictly in form, sufficient in substance."

A question quite analogous to the one under discussion was before the court in *State v. Knox*, 17 Neb. 683, where it was decided that a complaint for the embezzlement of $35 of the public moneys was sufficient, although it contained no specific allegation of value. The court, in speaking of the contention that an averment of value was indispensable, observed: "This would be necessary if property, or bank bills not a legal tender, had been embezzled; but where the allegation is the embezzling of thirty-five dollars in money, the amount designated expresses the value, the presumption being that it was lawful money." The same principle must control here. Money is the standard or measure of values; therefore, when a specified number of dollars or amount of money is stated or given, that sum is presumed to represent the value thereof. The legal effect of the verdict is the same as if the jury had said they found the value of the money

embezzled to be $151,884.45. It is somewhat informal, nevertheless it is sufficient in substance. An examination of the authorities cited upon this point by counsel for the defendant will show that not one of them can properly be enrolled in support of the proposition that this verdict is not sufficient, since in none of the cases was either the amount or value of the property ascertained and stated by the jury in their verdict.

We have scrutinized this record, and given the questions thereby presented the most careful investigation at our command, and the conclusion is irresistible that no reversible error is disclosed. The judgment is accordingly

AFFIRMED.

IRVINE and RAGAN, CC., expressing no opinion.